GLADYS M. HARGIS *et al.* v. W. C. ROBINSON AND S. H. MYTON, *as Executors, etc., et al.*

No. 12,256.  (66 Pac. 988.)

SYLLABUS BY THE COURT.

1. TITLE AND OWNERSHIP—*Province of Equity.* Equity does not encourage or reward negligence, and subrogation, which is founded on principles of equity and benevolence, is never enforced in favor of one who has been negligent in asserting an equity, and to the prejudice of innocent parties who have acquired intervening rights.

2. ——— *Right of Subrogation Waived.* Parties purchased real estate subject to a mortgage and to a judgment lien, and

afterward paid off and procured a cancelation of the mortgage. Some time later the land was sold to a third person at an execution sale to satisfy the judgment lien, when the original parties, who paid off the mortgage and who, with knowledge or the means of knowledge of the judgment lien, had never asserted any rights under the canceled mortgage or claimed that it had been kept alive for their protection, asked to be subrogated to the rights of the mortgagee. *Held,* that they were not entitled to subrogation as against the purchaser at the execution sale.

Error from Cowley district court; W. T. McBRIDE, judge.   Opinion filed December 7, 1901.   Division one.   Reversed.

*H. C. Hargis,* and *James McDermott,* for plaintiffs in error.

*G. H. Buckman,* for defendants in error.

The opinion of the court was delivered by

JOHNSTON, J. :  This was an action by the executors and legatees of the estates of M. L. Robinson, deceased, and of M. L. Read, deceased, to quiet title to a tract of land in Cowley county as against Gladys M. Hargis, H. C. Hargis, and James McDermott, or to be subrogated to the rights and interests of the Mutual Benefit Life Insurance Company, the original holder of a mortgage for $800 on the land.

On January 1, 1884, Sabrina Merydith was the owner of the land, and, with her husband, executed a mortgage thereon to the insurance company for $800, payable five years after date.   On February 2, 1887, the land was conveyed by the Merydiths to M. L. Robinson and M. L. Read.   Robinson died in 1887, and Read died in 1891.   Before the death of Read, and in 1889, George W. Robinson, acting as the agent of the executors and legatees of M. L. Robinson, deceased, and of M. L. Read, paid off the $800 mortgage

of the insurance company, and obtained a cancela-
tion of the same and a discharge of the mortgage
lien.     Before that time, and in 1886, O. M. Stewart
obtained a judgment for $720 against the Merydiths,
who were then the owners of the land, and, also,
against F. H. Servis and Peter Thompson, who were
sureties for the debt for which the judgment was ren-
dered.   Afterward, Servis, the surety, paid to Stewart
the amount of the judgment and obtained an assign-
ment of the same to his attorney, James McDermott.
M. L. Robinson, who was then living, acted as the
agent of Stewart in receiving payment from Servis
and in delivering to him the assignment of the judg-
ment.

When George W. Robinson paid off the mortgage of
the insurance company he had no actual knowledge
of the Stewart judgment.    It was kept alive by the
issuance of executions from time to time, and upon
one issued in 1893, at the instance of H. C. Hargis,
who was acting as attorney for James McDermott,
the assignee of the judgment, the land was sold to
Gladys M. Hargis for $1200.    The judgment with
interest then amounted to more than the purchase-
price of the land, and only the costs of the execution
sale, to wit, $56.40, was paid into court.    The sale
was confirmed by the court and a deed issued to the
purchaser in November, 1893, and she has been in
possession of the land since that time.    Upon the
facts of the case, the court held that the plaintiffs were
not entitled to have their title quieted as against
Gladys M. Hargis, but also held that they were enti-
tled to be subrogated to the rights of the mortgagee
under the mortgage made by the Merydiths to the in-
surance company.    The defendants in the court below
contended that the right of subrogation did not exist
and bring the case here for review.

Under the findings of the court, Gladys M. Hargis acquired a good title to the land in controversy through the execution sale and the sheriff's deed, and the only question remaining is whether the plaintiffs below were entitled to be subrogated to the rights of the mortgagee.    The Stewart judgment was a valid lien on the Merydith land when Robinson and Read purchased it, and also when the mortgage debt was paid.    It cannot be said that the purchasers were without knowledge of the judgment, as the uncontradicted testimony was that M. L. Robinson not only had personal knowledge of its existence, but that he also knew of the assignment of the same to McDermott.    Besides, the judgment was a matter of record, and all subsequent purchasers are deemed to have had notice of it and to have taken the land subject to the lien of the judgment.    If it were granted that the actual knowledge of Robinson was chargeable to his heirs, successors, and associates, the fact remains that if the other parties to the transaction of purchasing the land and paying the mortgage debt of the insurance company had examined the record they would have learned of the existence of a valid judgment lien, and they could have retained out of the purchase of the land a sum sufficient to have paid off the judgment lien.    There was no direct assumption of liens by Robinson and Read, but they are deemed to have taken it subject to valid liens that were of record, and they cannot plead ignorance of liens which an examination of the records would have revealed.    Ordinary care required an examination of the records, and where persons neglect to avail themselves of the appointed means of information, they are not in a good position to appeal for equitable relief, as equity does not encourage or reward negligence.

44—63 KAN.

If we should ignore the actual notice which was had of the judgment, and should assume that the payment and cancelation of the mortgage were to prevent a sale of the land and protect the title which the parties acquired from the Meredyths, we would still be unable to apply the doctrine of subrogation. It is a doctrine which is founded in pure equity and benevolence, only to be applied where it will promote justice, and is never enforced at the expense of innocent parties who have acquired intervening rights. When Gladys M. Hargis purchased the land at the execution sale the record showed that the mortgage had been paid and canceled and the lien of the same discharged. She appears to have been a *bona fide* purchaser, and, while the sum of money paid by her was not large, there was so much of an investment and such a change of position that it would have been inequitable to enforce subrogation in favor of parties so negligent in the protection of their own rights. This court has made a liberal application of the doctrine of subrogation, but it has never enforced it as against those holding intervening rights and liens, nor where it would prejudicially affect the rights of innocent parties. (*Richards v. Griffith*, 92 Cal. 493, 28 Pac. 484, 27 Am. St. Rep. 156; *Persons v. Shaeffer*, 65 id. 79, 3 Pac. 94; *Gerdine v. Menage*, 41 Minn. 417, 43 N. W. 91; *Ahern v. Freeman*, 46 id. 156, 48 N. W. 677, 24 Am. St. Rep. 206; *Bunn v. Lindsay*, 95 Mo. 250, 7 S. W. 473, 6 Am. St. Rep. 48.)

We think the court ruled incorrectly in holding that the defendants in error were entitled to be subrogated to the rights of the Mutual Benefit Life Insurance Company and, therefore, the judgment will be reversed and the cause remanded, with instructions to enter judgment in favor of the plaintiffs in error.

Doster, C. J., Smith, Ellis, JJ., concurring.