Nos. 37,619 and 37,667

EMILY L. HAYNES, *Appellant*, v. FLOYD Y. HAYNES, *Appellee*.

(212 P. 2d 312)

Opinion filed December 10, 1949.

*Howard A. Jones*, of Topeka, argued the cause, and *Charles L. Davis, Jr.*, of Topeka, was with him on the briefs for the appellant.

*Frank E. Miller*, of Topeka, argued the cause, and was on the briefs for the appellee.

The opinion of the court was delivered by

PARKER, J.: This is the aftermath of a divorce action. The appeal in case No. 37,619 is from an order of the district court of Shawnee county overruling a motion to revive an alleged judgment for child support, while case No. 37,667 involves an appeal from an order of the same tribunal adjudging the defendant in the divorce action not guilty of willful contempt of court in having failed to

make all the monthly payments of alimony and child support money required by the terms of the divorce decree. The two appeals have been consolidated and hereafter will be so treated.

The basic pertinent facts, except as they relate to the ability of appellee, who was the defendant in the court below, to make the payments in question, are not in controversy. They are, however, important to a review of all issues involved and for that reason will be stated as briefly as possible.

The parties were divorced by a decree of the district court of Shawnee county on March 3, 1936. The appellant here was the plaintiff in that action. She was given all of the property belonging to the parties with the exception of a mortgaged automobile and was awarded permanent alimony in the sum of $1,500 payable at the rate of $17.50 on the 5th and 20th of each month commencing March 20, 1936, such payments to cease forthwith in event of her death or remarriage. She was also given the custody of the two minor children of the parties. The appellee was directed, subject to further orders of the court, to pay $25 on the 5th and 20th of each month for the support of such children. By express terms of the decree all payments were to be made to the clerk of the district court.

From the record we are able to ascertain, and here note, the manner in which appellee complied with the requirements of the decree. From May 4, 1936, to January 1, 1938, twenty-three payments, ranging from $17.50 to $42.50 were paid to the clerk of the court. From February 5, 1938, to May 5, 1938, seven payments, one for $20 and six for $42.50, each was paid directly to the appellant. Between December 16, 1938, and May 21, 1948, appellee paid the clerk ninety-two payments, most of them being for $35 although it should perhaps be stated that one was as low as $7.50 while another was as high as $70.

The foregoing payments are all credited to appellee on the clerk of the court's alimony docket. In addition, the parties have stipulated that from 1937 to 1943 appellee paid $345.50 to appellant personally. Appellant likewise admits that three payments of $42.50 each were made by appellee in 1936 and were received by her from the clerk of the court even though they are not shown on that official's record. Neither the alimony docket nor the stipulation, or for that matter the evidence, make it clear how the payments heretofore described amounting to $4,353 were to be applied. At one point in the record appellant states they were paid on the order and

judgment for alimony and child support. However, in a later statement she asserts appellee was in default $1,700 on payments of child support accruing from October 15, 1943, to the date of the filing of the contempt accusation on October 15, 1948, and concedes that he had paid $1,300 on that account during such period of time. She is bound by that concession. Therefore, since they antedate the contempt proceeding, we proceed on the assumption that all payments made subsequent to October 15, 1943, must be regarded as having been paid on the order for child support.

It likewise appears from the record that for twelve years after the divorce decree was rendered in 1936 the appellant took no legal steps to enforce payment of the alimony judgment nor payment of the full amount of the child support order and that the first attempt of that character ever made by her was through the issuance of an execution dated September 10, 1948, directed to the sheriff of Saline county, Kansas, and later returned unsatisfied, for satisfaction of a judgment therein alleged to have been entered on March 3, 1936, in the sum of $4,822, which sum obviously included all alimony and child support payments claimed by her to be due under terms of the divorce decree up to the date of the issuance of such process.

On September 24, 1948, appellant filed a motion in the original divorce action to revive the judgment which reads as follows:

"Comes now the plaintiff above named and moves the court for an order reviving judgment for the child support payments which became due on the fifth and twentieth days of each month, in amounts of Twenty Five Dollars ($25.00) on each of the said days of each month, between October 5, 1941, and September 20, 1943, inclusive, according to the terms of this court's judgment entered on March 3, 1936."

As has been previously indicated the overruling of this motion is one of the matters now subject to appellate review.

Following the trial court's action on the motion to revive appellant instituted the contempt proceeding. The accusation reads:

"Comes now Emily L. Haynes, plaintiff in the above entitled action, and charges that the defendant, Floyd Y. Haynes, has knowingly disobeyed and violated the orders of this court in the following respects, to wit:

"1. That on the 3rd day of March, 1936, the court rendered judgment against the defendant in the above entitled action and ordered him to pay the sum of Fifteen Hundred Dollars ($1500.00) permanent alimony, and the sum of Fifty Dollars ($50.00) per month as child support money.

"2. That the said defendant was present at the trial of the cause, was represented by an attorney, and had actual knowledge of the judgment of the court and was familiar with the contents thereof.

"3. That said order has not been reversed, modified, or set aside, but has been at all times since last mentioned date, and still is, in full force and effect.

"4. That notwithstanding the premises, the said defendant, Floyd Y. Haynes, has knowingly, willfully, and contemptuously refused to obey the same and has failed to make the payments as ordered by the court.

"5. That a dispute now exists as to the amount which the defendant is in arrears in payments of alimony and child support money which are due to the plaintiff, and that the court should determine the amount due.

"6. That by reason of the failure of the said defendant to obey said order of the court, the authority of the court and respect to the court has been impaired, and the plaintiff has been put to inconvenience and has suffered the expense of bringing this action and employing cousel for the same.

"WHEREFORE, plaintiff prays that said defendant be adjudged guilty of indirect contempt of court and punished in such manner as may seem proper to the court, and that the court determine the exact amount due and owing from the defendant to the plaintiff; and that the defendant be ordered to pay the costs of this action, including attorneys' fees for the plaintiff's attorneys."

Shortly after appellee appeared in court to answer the contempt accusation his counsel dictated the following answer into the record:

"Comes now Floyd Y. Haynes, the defendant in the above entitled case and for his answer to the accusation filed herein denies each and every allegation therein contained. That said defendant denies that he is guilty of willful contempt of court as charged in said accusation. That no execution was issued on the judgment set forth in said accusation prior to September 11, 1948; that all sums due under the judgment of March 3, 1936, are barred by the statute of limitations other than any amount remaining due and unpaid for five years from this date.

"Wherefore defendant prays that he be discharged."

During the contempt hearing counsel for appellant requested that the court determine the amount due and owing from appellee for support money under the divorce decree and that when it was determined he be directed to pay it or that she be given judgment therefore as of that date. This request was denied. The court then proceeded with the trial on the contempt proceeding proper. After hearing the evidence and arguments of counsel it found appellee not guilty of contempt. Thereupon, appellant filed a motion for a new trial which was overruled. She then perfected her second appeal challenging the propriety of the rulings of the district court on the two matters last mentioned.

From a letter addressed to counsel for the parties, and included in the record, it is apparent the trial court's reasons for overruling the motion to revive the judgment were twofold. First, that under the provisions of G. S. 1935, 60-1510, courts are given absolute control over their child support orders. Second, that such orders are not

final unless reduced to judgment and until then they are only enforceable by attachment of the person—in this case the husband. The basic premise on which the first reason depends is only partially correct. Under our decisions (*Davis v. Davis,* 145 Kan. 282, 65 P. 2d 562; *Wilkinson v. Wilkinson,* 147 Kan. 485, 77 P. 2d 946; *Teegarden v. Teegarden,* 155 Kan. 195, 124 P. 2d 464; *Trunkey v. Johnson,* 154 Kan. 725, 730, 121 P. 2d 427; *Sharp v. Sharp,* infra), the rule that courts lack power to change or modify past-due installments for the support and education of minor children is now well established. We are constrained to hold the second reason is founded upon an entirely erroneous conception of existing law. This conclusion, of course, requires elucidation. At the outset it should be stated the trial court's theory with respect to the point now to be considered is not without sound legal support. In the letter to which we have referred the district judge cited and relied on *Scott v. Scott,* 80 Kan. 489, 103 Pac. 1005, and *McGill v. McGill,* 101 Kan. 324, 166 Pac. 501. Both cases support his position. It may be added that in another case, *Beasley v. Salkeld,* 131 Kan. 211, 289 Pac. 471, we held a decree for the support and maintenance of minor children, payable in monthly installments, without a provision making the installments a lien, is not a lien on real estate nor enforceable in an action in the nature of a creditor's bill. In that opinion we cited the Scott case with approval, quoted from it at length, and in effect stated that since the decree failed to and did not intend to give a lien it did not have all the attributes of a final judgment, was not enforceable on execution and, that in such a situation, the proper remedy was by a proceeding in contempt.

Notwithstanding what is said and held in the foregoing decisions, to the effect child support orders were not final in character and therefore not subject to execution, we think it was repudiated in our later decisions and can no longer be regarded as the law of this state. Nothing would be gained by explaining the reasons for the change in viewpoint on the subject or in attempting to reconcile the decisions. It suffices to say that commencing with *Sharp v. Sharp,* 154 Kan. 175, 117 P. 2d 561, this court in clear and unequivocal language announced the rule that installments, decreed in a divorce action, for support and education of the minor children of a marriage, when due and unpaid, become final judgments which may be collected as other judgments and that the statute of limitations begins to run on each of such installments from the period fixed for

the payment thereof as it became due. Indicating the reasons for its conclusion this court, in the opinion, said that inasmuch as courts do not have power to modify or change such past due installments it was convinced they could be collected by suit, judgment and execution, the same as past due unpaid alimony installments or other judgments.

While alimony payments are not involved in our consideration of the rights of the parties under the motion to revive the judgment it is interesting, in view of the statement made in the Sharp case, to note that under our decisions installments of that nature are held to be final in character and that a provision in a degree ordering them to be paid in periodical payments does not destroy their finality nor keep them from being enforced in the same manner as ordinary judgments. (See *Bassett v. Waters*, 103 Kan. 853, 176 Pac. 663; *Stoner v. Stoner*, 134 Kan. 356, 5 P. 2d 847; *Bourman v. Bourman*, 155 Kan. 602, 127 P. 2d 464.)

The decision in *Sharp v. Sharp*, supra, was promptly reaffirmed in two subsequent decisions and so far as our research has been able to disclose has never disapproved.

In *Trunkey v. Johnson*, 154 Kan. 725, 730, 121 P. 2d 247, we said:

"Likewise it is well settled in this state the district court has power to modify or change any order for the support of minor children, whenever circumstances require, but that it has no power to increase or decrease amounts past due (*Davis v. Davis*, 145 Kan. 282, 65 P. 2d 562), and that installments when due and unpaid become final judgments and may be collected as other judgments (*Sharp v. Sharp*, 154 Kan. 175, 117 P. 2d 561). It would seem by analogy that if the court possessed such power, there would no finality of judgment and no cause of action as to any installment to come due in the future until it was matured by passage of time. The relation of debtor and creditor would not exist." (p. 730.)

To the same effect is *Anderson v. Anderson*, 155 Kan. 69, 123 P. 2d 315, where each of the two cases last mentioned is cited in support of a statement that under the law of this state child support installments when due and unpaid become final judgments.

We are convinced the rule announced in our more recent decisions should not be disturbed. Therefore the trial court erred in holding the unpaid installments in the instant case were not final judgments and in refusing to ascertain whether their status was such that they could be revived as dormant judgments under the provisions of G. S. 1935, 60-3221.

The conclusion just announced does not, of course, do away with the concurrent remedy of enforcement by attachment of the person. See *Trunkey v. Johnson,* 156 Kan. 804, 807, 137 P. 2d 186, where it is said the usual way of enforcing child support orders is by attachment of the person of the husband.

Thus we come to the contempt phase of this appeal which all parties concede was properly instituted under authority of the provisions of G. S. 1935, 20-1201 to 1207, inclusive.

Appellant insists the trial court erred in that proceeding in refusing to determine the total sum owed by the appellee on the child support money order and in failing to render judgment against appellee for its amount.

In view of our conclusion on the motion to revive it seems to us the simple answer to this contention is that appellant already had a judgment on which she could easily compute the amount due, or claimed by her to be due, and that the trial court was under no obligation to do so. This rule is especially applicable where—as here —appellee not only was conceding he was in arrears on payments but the parties had agreed, if in fact they had not in eﬀect stipulated, as to amounts that had been paid.

However, there is another reason why this particular contention is devoid of merit. In this jurisdiction contempt proceedings are regulated by statute and are summary in character (*State v. Cutler,* 13 Kan. 131). Like in other proceedings of that nature (see *Gunter v. Eiznhamer,* 165 Kan. 510, 196 P. 2d 177; *Bell v. Dennis,* 158 Kan. 35, 36, 144 P. 2d 938), a party seeking to invoke the remedy must bring himself clearly within the provisions of the law and is only entitled to the relief therein authorized. So far as we are able to discern the only question before the court in such a proceeding is whether, under allegations of the accusation which must (G. S. 1935, 20-1204) clearly and succinctly set forth the facts relied on to constitute contempt, the accused is guilty as charged. True enough, on the hearing of an accusation, the court may take into account any and all matters necessary to enable it to determine that question, including the sum total of payments due and unpaid where the charge is failure to comply with an order for child support. But it is not required to make a finding as to the amount of those payments, let alone render another judgment for them. It follows the court did not err in restricting its decision in the instant contempt proceeding to the guilt or innocence of the appellee.

Finally, as appellant contends, must it be held that the trial court erred in refusing to find appellee guilty of contempt? We are not disposed to labor the evidence. It should be said counsel for appellant frankly stated in open court that what his client wanted was the money due and that she was not asking that he be put in jail. The trial court heard the testimony and had an opportunity to see the witnesses. At the end of the trial it stated that under the evidence the appellee was not a money-maker, never had been, and was unable to support himself and also make the payments. It then pointed out that in its opinion appellee had shown no disposition to willfully violate its orders and said:

"The picture is plain to me, here is a man that has been in business, like many businesses, for some reason I don't know why, they have gone on the rocks, the partnership was involved and his business is wound up and there isn't much left for anybody. A man of his age without a job, without any business, there isn't a very bright outlook, on the future without the Court imposing any penalties upon him. I just feel that this is a case where it is for the best interests of the son and the mother and of the father, for all of them, that the defendant be discharged on his promise to make these payments in the future to the best of his ability and if the facts warrant it, the matter can again be called to the Court's attention later on.

"The defendant is discharged with the understanding that he make the payments that he has agreed to make."

It must be remembered that by the very nature of a contempt proceeding the decision of guilt or innocence of an accused rests in the sound discretion of the trial court before whom the matter is pending. One reason why this rule is peculiarly applicable in such proceedings is that orders therein made are not final and conclusive but are always subject to reconsideration on the filing of subsequent accusations. It must, likewise, be kept in mind that when a trial court has exercised that discretion and its decision has been challenged by appeal the sole duty of the appellate court is to determine whether the record reveals such an abuse of discretion as to warrant a reversal of its action. This is true even though the appellate court might have rendered a contrary decision under the evidence if it had been sitting in judgment.

Under the circumstances and conditions heretofore related, conceding as we must that the record discloses some testimony to sustain the trial court's factual conclusions and its ultimate decision, we cannot say its action in finding the appellee should be discharged and in holding him not guilty of contempt warrants a reversal of the judgment.

In view of the conclusions heretofore announced the judgment in Case No. 37,619 must be reversed and the judgment in Case No. 37,667 affirmed.

HARVEY, C. J., dissents.

PARKER, J. (concurring): I prefer the rule of our earlier cases, but agree that since our decision in *Sharp v. Sharp,* 154 Kan. 175, 117 P. 2d 561, the law in force and effect in this state has been that past-due installments under the provisions of orders for the support and education of minor children become final judgments and may be collected in the same manner as other judgments. Therefore, because I believe in the doctrine of *stare decisis,* I reluctantly concur in the rule adhered to in the second portion of paragraph 1 of the syllabus of the foregoing opinion.

PRICE and ARN, JJ., join in the foregoing concurring opinion.