No. 44,581

Helen Winona Brieger, *Appellant*, v. George Harold Brieger, *Appellee*, and E. B. Matlock, Jr., and Pauline C. Matlock, husband and wife, and R. D. Hydorn and Bessie Hydorn, husband and wife, Intervenors, *Appellees*.

(421 P. 2d 1)

Opinion filed December 10, 1966.

*Van Smith*, of Jetmore, argued the cause and was on the brief for the appellant.

*Richard L. Ashley*, of Chanute, argued the cause and was on the brief for the appellees, E. B. Matlock, Jr., and Pauline C. Matlock.

*John N. Sherman, Jr.*, of Chanute, was on the brief for the appellees, R. D. Hydorn and Bessie Hydorn.

*Kenneth H. Foust*, of Iola, was on the brief for the appellee, George Harold Brieger.

The opinion of the court was delivered by

FONTRON, J.: This appeal is from an order enjoining the sale of real estate under an execution.

Historically, this action stems from a judgment entered by the District Court of Neosho County on September 8, 1959, granting the plaintiff, Helen Winona Brieger, a divorce from her husband, George Harold Brieger, and awarding plaintiff sixty dollars ($60) per month child support for the minor children placed in her custody. In the same decree the court divided the joint property of the Briegers, setting over certain city real estate in Chanute to Mrs. Brieger and awarding an 80-acre farm in Wilson County to Mr. Brieger.

Shortly after the divorce was granted, Mr. Brieger, who will be referred to in this opinion as the defendant or Brieger, began to default in making the payments of child support required by the court's decree. On December 22, 1961, an attested copy of the journal entry of the judgment entered in the divorce action was filed in the office of the clerk of the District Court of Wilson County, Kansas, together with a statement of costs. Thereafter, and on January 11, 1962, the defendant conveyed his Wilson County farm to E. B. Matlock, Jr., and Pauline Matlock, husband and wife, and this conveyance was recorded on January 15, 1962. Approximately three years later, on February 9, 1965, the Matlocks conveyed the farm to R. D. Hydorn and Bessie M. Hydorn, the conveyance being recorded February 10, 1965. Hereafter, we shall refer to these grantees as Matlock and Hydorn respectively.

On August 3, 1965, the District Court of Neosho County, acting on the plaintiff's motion for revivor, entered its order reviving the judgment of September 8, 1959, in accordance with the provisions of K. S. A. 60-2404. On approximately October 6, 1965, a praecipe for execution was filed in the District Court of Neosho County and an execution was issued directing that the Wilson County farm be sold and that the proceeds of sale be applied first, to costs, second, to taxes, and third, to plaintiff's judgment which then amounted to $3,342.50, plus $457.16 interest.

At this juncture, Matlock and Hydorn entered the picture by filing a motion to intervene and a petition for a temporary restraining order. Plaintiff countered by filing an answer to the intervenors' petition for restraining order and a trial thereupon ensued, at the

conclusion of which the trial court permanently enjoined the execution sale of the Wilson County farm. The plaintiff, Mrs. Brieger, has appealed that judgment to this court. Both the defendant, Brieger, and the intervenors, Matlock and Hydorn, appear here as appellees.

Essentially, the questions to be determined in this appeal are whether the plaintiff has any judgment liens against the Wilson County farm upon which execution can be levied at this time and, if so, the extent and reach thereof.

The copy of the plaintiff's divorce decree filed in Wilson County some 24 days before Brieger's farm was conveyed to Matlock disclosed the award of child support at the rate of $60 per month. At that time, the statute which related to judgment liens was G. S. 1949, 60-3126 (since reenacted as K. S. A. 60-2202), which, so far as pertinent here, provided:

". . . An attested copy of the journal entry of any judgment, together with a statement of the costs taxed against the debtor in the case, may be filed in the office of the clerk of the district court of any county, and such judgment shall be a lien on the real estate of the debtor within that county from the date of filing such copy. . . ."

When the attested copy of the journal entry of the Brieger divorce was filed in Wilson County, it then became a matter of public record, and public notice, in that county. A subsequent purchaser of the defendant's farm would be deemed to have notice of whatever lien was evidenced by the recorded journal entry and would take his title to the farm subject to such lien. (*Hargis v. Robinson,* 63 Kan. 686, 689, 66 Pac. 988; *Kuhn v. Bank,* 74 Kan. 456, 458, 87 Pac. 551.)

Accordingly, the plaintiff contends that the Wilson County farm, which Brieger conveyed after the copy of the divorce decree was filed in Wilson County, and which is now owned by a subsequent grantee, is subject to a judgment lien both for support payments due and unpaid at the time of Brieger's conveyance and for payments coming due thereafter, as well.

The appellees do not deny that plaintiff filed a copy of the journal entry in Wilson County, but they maintain that no judgment lien was created thereby. This argument is based on the character of an award for installment payments of child support. It has long been held by this court that orders directing periodic payments for the support of minor children are subject to prospective change and modification. (*Greenwood v. Greenwood,* 85 Kan. 303, 116 Pac.

828; *Dague v. Dague*, 126 Kan. 405, 267 Pac. 988.) Hence, it is the appellees' contention that the award of monthly child support payments in this case lacks the finality of a money judgment and creates no lien whatsoever.

We believe the general rule to be that a judgment which directs the periodic payment either of support or of alimony and which fails to provide that the judgment shall be a lien on specific property does not, of itself, constitute any lien on the real estate owned by the father or husband. A discussion of this rule is found in 59 A. L. R. 2d, Anno: Alimony or Support Decree—Lien, § 3, pp. 660-663, where it is said:

". . . The uniformly accepted rule is that unless a decree for periodical payments for support or alimony specifically states that it shall constitute a lien on property, none arises, in the absence of a statute declaring such decree a lien. Stated differently, a decree for periodical payments for support or alimony does not automatically become a lien on the property of the husband in the absence of any provision for such a lien in the decree. . . ." (p. 660.)

In *Roach v. Roach*, 164 Ohio St. 587, 59 Ohio Op. 1, 132 N. E. 2d 742, 59 A. L. R. 2d 685, the Ohio court said:

". . . A judgment for periodic installments for an indefinite time can not create a lien on real property, in the absence of a provision in the judgment itself for a lien. [Citing cases.]" (p. 592.)

The rule was applied by the California Supreme Court in *Yager v. Yager*, 7 Cal. 2d 213, 60 P. 2d 422, 106 A. L. R. 664, where it was said:

". . . a judgment for periodic installments for an indefinite time is not a lien on property of the judgment debtor unless the judgment provides for a lien. (*Bird v. Murphy*, 82 Cal. App. 691 [256 Pac. 258]; see note, 79 A. L. R. 252.)" (pp. 216, 217.)

See, also, *Moniz v. Moniz*, 142 C. A. 2d 641, 299 P. 2d 329.

This court has approved the foregoing rule so far as it may apply to payments required to be made in the future. In *Trunkey v. Johnson*, 156 Kan. 804, 137 P. 2d 186, where a resident of the state of Washington attempted to attach Kansas real estate for installments of child support coming due after the land had been conveyed, we said:

"In this state, and it is not shown to be otherwise in Washington, a decree of a court in a divorce case giving the custody of minor children of the parties to the wife and requiring the husband to pay a definite sum at stated intervals into court for the support of the children, does not make the sums *to be paid* a lien upon any property of the husband. . . ." (p. 807.) (Emphasis supplied.)

The *Trunkey* case was quoted at length and followed in *Wilcox v. Wilcox*, 172 Kan. 262, 240 P. 2d 144.

We are cited to no authority upholding plaintiff's contention that a judgment which provides for periodic support payments will create a lien for installments not yet due. Indeed, the authorities are quite to the contrary. This being so, we think it clear that no judgment lien attached to the Wilson County farm for any installment of child support until the same became due and unpaid. It follows that the title conveyed to Matlock, and by him to Hydorn, was not subject to a lien for future support payments, there being no suggestion of fraud in either conveyance.

On the other hand, we believe it is equally well settled in this jurisdiction that installments of child support, when they are due and unpaid, become final judgments and constitute a lien upon the real estate of the delinquent father and they may be enforced and collected as are other judgments. (*Sharp v. Sharp*, 154 Kan. 175, 117 P. 2d 561; *Trunkey v. Johnson*, supra; *Haynes v. Haynes*, 168 Kan. 219, 212 P. 2d 312; *Andrews v. Andrews*, 171 Kan. 616, 237 P. 2d 418; *Fangrow v. Fangrow*, 185 Kan. 227, 341 P. 2d 998; *Hains v. Hains*, 187 Kan. 379, 357 P. 2d 317.)

Thus, in determining what, if any, judgment liens existed against the Wilson County farm on the date of Brieger's conveyance to Matlock, a distinction must be drawn between installments of child support which were then due and payable and installments which might become due and unpaid in the future. As to each installment, which was then delinquent, a judgment lien existed; as to future installments becoming delinquent, no lien existed. Matlock took his title subject only to judgment liens for those installments of support which were due and unpaid at the time.

It is true that the Wilson County records would not disclose how many child support payments were due and unpaid when the farm was conveyed, but we believe that was not required. The record of the decree was a matter of public knowledge. The purchaser, Matlock, was thus put on notice of the award itself and it was within his means to ascertain whether and what installments were due and unpaid thereunder. We think this placed no insurmountable burden upon him.

Finally, we must determine the effect of the order of revivor. The record reflects that on August 3, 1965, when the order was made, some support payments had been delinquent for more than five

years and the judgments accruing thereon had thus become dormant by virtue of K. S. A. 60-2403. While those dormant judgments were subject to being revived by proceedings brought under K. S. A. 60-2404 (*Sharp v. Sharp*, supra), the issue is whether the liens of the judgments which had been dormant and were thus revived would carry over and be re-established as against Matlock and Hydorn, the subsequent grantees. From our research, it appears this court has never passed on this specific point.

We entertain no doubt that the revivor proceedings were effective as to Brieger and that had he still owned the farm when the dormant judgments were revived, the lien of those judgments would have been re-established against his farm. But Brieger had conveyed the farm and interests of two grantees had intervened. The question thus becomes one of priorities. We must determine whether the liens of the revived judgments retain their priority against the rights acquired by Matlock and Hydorn under their deeds, or whether such priority has been lost.

The general rule, we believe, is expressed in 49 C. J. S., Judgments, § 494, p. 949:

".  .  . Ordinarily the lien cannot be revived so as to overreach conveyances or encumbrances subsequent to the entry of the original judgment and prior to its revival  .  .  ."

The same view was voiced by the Nebraska Supreme Court in *Campagna v. Home Owners Loan Corporation*, 141 Neb. 429, 3 N. W. 2d 750 where it said:

".  .  . We have held on numerous occasions that a dormant judgment is not a lien on real estate. It is true that upon revivor of the judgment the lien thereof again attaches although its priority is lost  .  .  ." (p. 430.)

A situation similar to the one at bar was before the Supreme Court of Utah in *Smith v. Schwartz*, 21 Utah 126, 60 Pac. 305. In that case, a judgment entered by a justice of the peace was docketed in district court, thereby becoming a lien against certain real estate of the debtor. Thereafter, a mortgage lien also accrued against the land and, subsequently, the judgment lien was allowed to expire. The judgment was later renewed. The court in that case held that, upon lapse of the judgment, the mortgage lien became a first and prior lien against the land and that a sale of the land, under the renewed judgment, could not adversely affect the lien of the mortgage.

In *Pugh v. Heating & Plumbing Finance Corporation*, 49 N. M. 234, 161 P. 2d 714, the New Mexico court said:

"A timely revivor of a judgment may have the effect to also continue the judgment lien, subject possibly to displacement as to priority by intervening liens or encumbrances. . . ." (p. 238.)

See, also, 30A Am. Jur., Judgments, § 579, p. 572, and cases therein cited.

Although there is some authority to the contrary, we are satisfied that the prevailing rule, as reflected in the foregoing authorities, is soundly based and worthy of adoption. Applying the rule to the instant case, we are constrained to hold that the revivor of the judgments, which had become dormant subsequent to Brieger's conveyance of the farm, did not operate to re-establish liens enforceable against the intervening grantees, Matlock and Hydorn.

Before concluding, we note the trial court's reference, in its memorandum decision, to the latter part of our opinion in *Preston v. Preston,* 193 Kan. 379, 394 P. 2d 43. We believe the court mistook the import of our decision in that case. Although we there determined that an alimony award payable in installments should, in its entirety, be impressed as a lien on certain real estate, we did not intend to suggest that past due installments would not become enforceable judgments. The *Preston* decision is not to be so construed.

We conclude that the trial court erred in enjoining the execution sale in its entirety, for the record reveals the existence of some valid and subsisting judgment liens as of the time execution was levied. The aggregate amount of such liens, and the accumulated interest thereon, are matters for computation in the court below.

The judgment is reversed and this case is remanded for further proceedings consistent with the views expressed in this opinion.

FROMME, J., dissenting: An undesirable amount of confusion and fiction has crept into the law of Kansas relating to alimony and child support judgments. I am able to see neither logic nor necessity for the holding expressed in our majority opinion and I register my dissent to the court's syllabus 3. Our special concern for the children of broken homes has resulted in extending certain special protections to assure their support. This is understandable when necessary for their protection. But the courts have adequate authority to enforce payment of support by both attachment of the person and by impressing a specific lien on the real estate of the parties. Amounts due for unpaid support automatically result

in a personal judgment which is enforceable the same as any other judgment. (*Sharp v. Sharp*, 154 Kan. 175, 117 P. 2d 561.)

The majority opinion reaches out yet further and impresses an implied or fictional lien upon the real estate outside the county of residence when no similar lien would be applied in the case of any ordinary personal judgment. The court is applying a doctrine *similar* to *lis pendens* upon the filing of the divorce decree, yet the court does not give force to that portion of the law of *lis pendens* which says the doctrine does not operate as notice of subsequent facts or issues. This doctrine has no greater effect than to give notice of the rights of the parties as finally determined by the judgment and decree in the case. The doctrine does not operate as notice of subsequent facts or issues. (54 C. J. S. Lis Pendens, § 40.) Such notice is effective only while the action is pending and not after judgment. (*Moorhead v. Guliford*, 163 Kan. 730, 186 P. 2d 275; 54 C. J. S. Lis Pendens, § 28, § 36.)

A purchaser after notice takes the property subject only to rights determined by the judgment and decree of the court. In our present case when we apply the doctrine of *lis pendens* and look to the decree of divorce on file what does the purchaser see? He sees the property subject to any rights as determined and set out in the decree. Looking at the decree a purchaser reads of a divorce action which was determined and in which the wife receives custody of the children. The husband is directed to pay $60.00 monthly for support. There is a division of property by the court whereby the husband receives the property "free and clear of any claim of" the wife. This judgment speaks of the rights of the parties as of the date of rendition of the decree and a purchaser should not be required to go further.

A trial court has authority to make the award a specific lien upon the real estate set over to the husband. Such action has been upheld in cases covering an award of alimony. (*Chapman v. Chapman*, 184 Kan. 319, 336 P. 2d 407; *Smith v. Smith*, 186 Kan. 728, 352 P. 2d 1036.) When no such lien is decreed and none is shown in the decree of divorce the party interested in receiving support payments should be required to take steps to enforce the judgment for unpaid child support or she should be barred from pursuing the real property in the hands of a purchaser for value. To issue an execution upon the judgment is a simple procedure familiar to all lawyers. An execution issues out of the court in which the

judgment is rendered. (K. S. A. 60-2202.) It is only there that the amount of unpaid support payments can be determined. The records in that court are more readily available to the public. Since we are committed to the fiction that a personal judgment automatically arises on nonpayment I would adhere to that portion of our decisions as interpreted by this court in *Haynes v. Haynes,* 168 Kan. 219, 212 P. 2d 312, but I would not extend it further.

G. S. 1949 60-3126 relating to liens on real estate provided:

"*Judgments* of courts of record of this state, and of courts of the United States rendered within this state, *shall be liens on the real estate of the debtor within the county in which the judgment is rendered,* from the first day of the term at which the judgment is rendered; but judgments by confession, and judgments rendered at the same term during which the action was commenced, shall bind such lands only from the day on which such judgment was rendered. *An attested copy of the journal entry of any judgment,* together with a statement of the costs taxed against the debtor in the case, *may be filed in the office of* the clerk of the district court of any county, and *such judgment shall be a lien on the real estate of the debtor within that county from the date of filing of such copy.* The clerk shall enter such judgment on the appearance and judgment dockets in the same manner as if rendered in the court of which he is clerk. *Executions shall be issued only from the court in which the judgment is rendered.* (Emphasis supplied.)

The majority opinion does violence to the very purpose of this statute which in my opinion relates to all personal judgments, including those judgments which automatically result on nonpayment of child support. It requires an attested copy of the journal entry of any judgment be filed in the proper office of any other county before a lien is imposed upon the debtor's real estate in any such other county. The lien begins "from the date of filing." We cannot logically hold that a judgment for unpaid child support can be filed before such judgment has arisen or is entered.

The majority decision points to the filing of the original divorce decree and says this is the judgment for non-support arising by reason of failure to make payments which complies with G. S. 1949 60-3126 (now K. S. A. 60-2202). How can this be when the decree in the divorce action sets the property over to defendant free of any lien or claim of the wife? The fictional judgment for nonsupport did not arise until defendant failed to make a support payment. In this present case it was eight months after the date of the divorce decree. This fictional judgment then became merely a personal judgment and should enjoy no special privilege. The statute does not permit a filing before a judgment is obtained. It now appears

we are indulging in a second fiction which will make for uncertainty and confusion in titles to all real estate of the parties to a divorce action. In the future when a party to a divorce action is directed to make monthly payments of support and alimony the other party will merely file the decree of divorce in all counties in which property is located and will thereby impress an automatic lien for any unpaid amounts against the land. If a payment is missed a personal judgment will automatically result in the county in which the divorce was granted, and this personal judgment under the present decision automatically becomes a lien upon real estate in any county of the state, provided the other party has had the foresight to file the decree of divorce in such county.

The future difficulties which will arise will be many for the fictional judgment automatically rendered in these cases does not appear on the records of any court. In order to determine the amount you must follow the record of payments received by the clerk and discover at your peril which payments have not been paid. You must also determine at your peril if all children are minors and still living. The payments stop when a child reaches his majority. The payments in some cases are made by the father direct to the mother or otherwise omitted from the court records.

I see no reason for further extending the special privileges enjoyed by this type of judgment since the trial court in the decree of divorce has the power to impress a lien upon the real estate to assure payment of these sums. When the trial court does so it will then appear in the decree of divorce and be apparent to any prospective purchaser. The logic of this is apparent in the present case for the certified decree of divorce was filed December 22, 1961 and Mrs. Brieger did nothing more to collect the judgment until a praecipe for execution was filed October 6, 1965. Between the filing of the certified decree and the request for execution this property has passed to two different purchasers for value. Matlock purchased the property in 1962 and sold to Hydorn in February 1965. The majority feel these purchasers must take notice of the decree of divorce together with subsequent facts and issues arising after the date of the decree, and the burden of payment is thereby shifted from the father to purchasers for value. I do not agree.

I would therefore affirm the judgment of the trial court.

SCHROEDER, J., joins in the foregoing dissent.