No. 46,319

JACKSON & SCHERER, INC., *Appellee,* v. MARGARET A. WASHBURN a/k/a MARGARET A. CASTAGNA, *Appellant,* and GLENN E. BRUNK [Sheriff], (*Defendant*), and HOWARD WASHBURN and DOROTHY LEE WASHBURN, (*Defendants*), and THE BROTHERHOOD STATE BANK OF KANSAS CITY, KANSAS, *Intervenor-Appellee.*

(496 P. 2d 1358)

Opinion filed May 6, 1972.

*John H. Fields,* of Carson, Mahoney and Fields, of Kansas City, argued the cause and *Charles D. Kugler,* of Kansas City, was with him on the brief for the appellant.

*Edward H. Powers,* of Kansas City, argued the cause and was on the brief for appellee, Jackson & Scherer, Inc.

*Donald H. Corson, Jr.,* of Kansas City, argued the cause and was on the brief for the intervenor-appellee, Brotherhood State Bank of Kansas City, Kansas.

*Howard Washburn,* of Kansas City, *pro se.*

The opinion of the court was delivered by

KAUL, J.: This appeal stems from a controversy arising from the efforts of Margaret A. Castagna, formerly Washburn, to enforce a judgment for past due alimony and child support against her former husband, Howard Washburn. The judgment was in the original sum of $8,014.00. (See *Washburn v. Washburn,* 204 Kan. 160, 460 P. 2d 503.) Both Howard and Margaret remarried and Howard was later divorced from his second wife, Dorothy Lee.

Plaintiff-appellee, Jackson & Scherer, Inc. (hereafter referred to as plaintiff or Jackson), a partnership at the time, owned property at 1718 North 79th Street in Kansas City, Kansas, upon which it built a residence after securing a short-term construction loan in the amount of $37,500 from the Brotherhood State Bank (hereafter referred to as Bank) on April 27, 1966. The residence was completed and, on August 9, 1967, Howard Washburn and his wife, Dorothy Lee, executed an option agreement with Jackson & Scherer, Inc. to purchase it for the sum of $55,000.00. Bank's loan to plaintiff was increased to $44,000.00 and a ten-year mortgage was executed.

In January 1970 Howard became in default on the option agreement which was written on a Form 319A "Option Agreement—Flat Payment"—a document which has been quite familiar to this court down through the years. (See *Letzig v. Rupert, Executor,* 209 Kan. 143, 495 P. 2d 955.) In the meantime, Margaret, on December 16, 1969, in her divorce action against Howard, procured an order of sale of the property. The sale was set for January 20, 1970, and notice thereof was published in the Wyandotte Echo, a weekly newspaper published in Wyandotte County.

On January 15, 1970, plaintiff filed this action against Glenn E. Brunk, Sheriff of Wyandotte County, Margaret Washburn a/k/a Margaret A. Castagna, and Howard and Dorothy Lee Washburn. Plaintiff alleged that it owned the property; that it was indebted to Bank in the amount of $41,379.54, secured by a first mortgage on the property; and that, assuming Howard and Dorothy Lee complied with the option agreement, they would be presently indebted to plaintiff in the amount of $43,746.19. Plaintiff further alleged that defendants each claimed some estate in or lien on the subject

real estate, but whatever claims any of the defendants had they were inferior and subject to the title of plaintiff; and that all of the defendants should be ordered to present their claims. Plaintiff further alleged that if defendant sheriff attempted a sheriff's sale of the subject property, the rights of plaintiff would be seriously prejudiced. Plaintiff prayed that its title be quieted as against each defendant; that the court should set out what inferior claims the defendants might have to the property; and that the sheriff be restrained from selling the property under the order of sale issued in Margaret's divorce action.

An *ex parte* order was issued restraining the sheriff from proceeding with the sale until the further order of the court.

On January 23, 1970, Howard filed an answer alleging that he had an equitable interest in the property and that it was his homestead. He further alleged that he and Dorothy Lee Washburn had purchased an option agreement on subject real estate and had paid $11,253.81 on said contract.

Bank moved to intervene and filed an answer alleging the indebtedness of plaintiff; that it was a renewal and extension loan made to plaintiff for the purpose of constructing a house on the property; that Bank's mortgage was a purchase money mortgage; and that any interests of Howard, Dorothy Lee or Margaret were inferior to the title of plaintiff and the lien of Bank.

On February 7, 1970, Margaret filed an answer denying that plaintiff's rights would be prejudiced by the sheriff's sale. Margaret also filed a counterclaim against plaintiff in which she alleged that the restraining order was unnecessary; that it was maliciously issued without any reasonable or probable cause. Margaret prayed for actual damages in the amount of $3,500.00 and punitive damages in the amount of $50,000.00 on her counterclaim.

On February 9, 1970, Margaret filed a motion to dissolve the restraining order. On February 20, the motion was heard and denied—the trial court ruling as follows:

"The motion of Margaret Castagna to dissolve the restraining order in the above matter was heard on February 20, 1970, and was taken under advisement. I have since examined the files in the two cases. In my opinion, a fair sale of any kind would be very improbable until after such time as the various interests and priorities are determined. The motion will therefore be overruled. I have set the matter for trial to the Court on Monday, March 23, 1970, commencing at 9 a. m. and I have allowed one-half day for the trial. As a matter of fact, it seems to me that the parties could stipulate as to practi-

cally all of the facts, at least insofar as the documents and records concerned are involved. I do not believe the interests of Mrs. Castagna will be jeopardized by staying the sale until the matter can be heard and therefore no bond will be required."

In the meantime, plaintiff filed a separate action against Howard and Dorothy Lee seeking cancellation of the option agreement. This action was consolidated with the instant action and both came on for trial to the court on March 23, 1970.

The trial court filed a comprehensive memorandum in which it reviewed the claims of the parties; their stipulations, testimony and exhibits before the court. The trial court held that the option agreement was in default and should be canceled, the restraining order should be set aside and the property sold, either at private sale or if that could not be accomplished then by judicial sale and the proceeds applied first, to the payment of costs and taxes, second, to the Bank's mortgage, third, to Margaret's judgment, and fourth, the balance—if any—to plaintiff. The court reserved jurisdiction to make any orders necessary to effectuate the judgment and further ruled that plaintiff's motion for summary judgment on Margaret's counterclaim would be set for hearing at an early date.

After a dispute concerning a journal entry, judgment was entered on April 14, 1970, at which time the court found that the real estate should be sold at private sale. On June 6, 1970, Howard moved the court to set a date at which the private sale should be concluded and further, if the private sale be not concluded by the date set, the court should determine his amount of equity and the redemption he was entitled to under the option agreement.

The private sale referred to in the court's judgment was a sale between Howard and Dorothy Lee Washburn, sellers, and Jerry L. Andrew, purchaser, all of whom executed a contract for the purchase of the real estate on January 27, 1970. The sale price was $54,000.00 to be paid $1,000.00 down and the purchaser to pay the difference in cash between the sale price and the outstanding loan held by Bank in the approximate amount of $41,000.00. The contract further provided that the sellers (Howard and Dorothy Lee) were to pay plaintiff a six percent sales commission.

In connection with the private sale it should be mentioned that on February 19, 1970, Margaret, in her divorce action against Howard, commenced a collateral proceeding to enforce her judgment by filing a praecipe for garnishment naming Andrew as a

garnishee defendant. The garnishment proceeding was processed in another division of the Wyandotte District Court. Margaret's appeal from an adverse ruling therein has reached this court and is decided this day. (*Washburn v. Andrew*, 209 Kan. 436, 496 P. 2d 1367.)

One June 19, 1970, a report of the private sale to Andrew was filed in which it was stated that the conditions of the purchase contract referred to had been complied with and that a deed conveying the property from plaintiff to Jerry L. and Beverly A. Andrew had been filed of record; that the net proceeds of the sale totaled $12,654.16, which was paid into the court on the filing of the report. On August 31, 1970, the trial court filed its ruling on plaintiff's motion for summary judgment on Margaret's counterclaim holding that Margaret's motion to dissolve the restraining order upon which her counterclaim was based was overruled by the court and, therefore, summary judgment should be entered for the plaintiff.

Thereafter, this appeal was perfected.

The first point raised by Margaret on appeal is that the trial court erred in refusing to permit her to proceed with a judicial sale of the subject real estate. Margaret argues that as a judgment creditor she had an absolute right to a judicial sale of Howard's interest on January 20, 1970, the original date of the sheriff's sale.

The trial court granted the restraining order on the ground that the sale would produce injury to the plaintiff and that a fair sale of any kind would be very improbable until the various interests and priorities were determined.

Plaintiff was the owner of the property. Howard's interest was only that which might be acquired under a Form 319A "Option Agreement—Flat Payment." (See *Stevens v. McDowell*, 151 Kan. 316, 98 P. 2d 410; and *Letzig v. Rupert, Executor*, supra.) The option agreement specifically provided that the Washburns (Howard and Dorothy Lee) "shall not assign or transfer this option or rights thereunder without the written consent of" plaintiff. The substitution of the purchaser at a judicial sale, as purchaser under the option agreement, could well have injured the rights of plaintiff as owner of the property so as to give it sufficient interest to restrain the proposed sale by Margaret until a full sale of the property could be had with a determination of priorities. Margaret's praecipe for sale and the order issued thereon are not reproduced in the record, therefore, we are not informed as to any conditions, if any,

with respect to liens or encumbrances under which the proposed sale was to be had.

It is true that generally the interest of a judgment debtor in property may, in a proper case, be levied upon and sold on execution subject to liens or encumbrances already existing. (K. S. A. 60-2406; *Koelliker v. Denkinger*, 148 Kan. 503, 83 P. 2d 703; and *Thompson v. Zurich State Bank*, 124 Kan. 425, 260 Pac. 658.) In the instant case, however, the plaintiff—not Howard—was the owner of the subject property when Margaret's execution sale was restrained. Plaintiff, of course, was not a party to Margaret's divorce proceeding in which the execution was sought. In the case of *Yount v. Hoover*, 95 Kan. 752, 149 Pac. 408, we held:

"An action can be maintained by the owner of real property to enjoin its sale under an execution issued on a judgment against another person in an action to which the owner of the property was not a party." (Syl. ¶ 2.)

See, also, 30 Am. Jur. 2d, Executions, § 630 [Owners of property or interests therein], pp. 800-801; and 42 Am. Jur. 2d, Injunctions, § 78, p. 823.

Plaintiff, as owner of the subject property, instigated this action seeking equitable relief in the form of quieting title, establishing priority of liens and the restraining of an execution sale in an action to which it was not a party. Even though Howard may have had an interest subject to Margaret's judgment lien, we believe the trial court acted with discretion and within the scope of its equitable powers under the extraordinary circumstances in restraining the sale until the conflicting interests and priorities of the various parties could be determined.

In support of her position, Margaret relies primarily on our decision in *Brieger v. Brieger*, 197 Kan. 756, 421 P. 2d 1, wherein we set aside a trial court's order permanently enjoining the sale of real estate on execution of a judgment for child support. The issue presented in *Brieger* is clearly distinguishable from that before us here. Mrs. Brieger secured a divorce and an award of $60 per month child support for minor children placed in her custody in the District Court of Neosho County. In the same decree the court divided the property of the Briegers' setting over certain city real estate in Neosho County to Mrs. Brieger and an 80-acre farm in Wilson County to Mr. Brieger. Mr. Brieger defaulted in the child support payments. About two years after the divorce, an attested copy of a journal entry of the judgment was filed with the clerk of the

District Court of Wilson County. Several months after the filing of the journal entry Mr. Brieger sold his Wilson County farm. Approximately three years after the sale the farm was reconveyed and some six or seven months after this last conveyance, a praecipe for execution was filed in the District Court of Neosho County and an execution was issued directing the sale of the Wilson County farm. The proceeds of the sale were to be applied first, to costs, second, to taxes, and third, to plaintiff's judgment which amounted to over $3,000.00. At this juncture, the last grantee of the Wilson County farm filed a motion to intervene in the Neosho County case and a petition for a temporary restraining order restraining the sale on execution—the said grantees claiming that no judgment lien was created by the filing of the journal entry of divorce in Wilson County. The grantees of the Wilson County farm argued that the award of monthly child support payments lacked the finality of a money judgment and created no lien whatsoever and the trial court so held.

The majority of this court, in line with previous decisions cited in the opinion, held that installments of child support when they are due and unpaid become final judgments, constitute a lien upon the real estate of a delinquent father and may be enforced and collected as other judgments. The decision made a careful distinction concerning payments due and unpaid and payments required to be made in the future. In other words, the issue in *Brieger* was whether or not past due installments of child support gave rise to an enforceable judgment lien. The trial court there held that no lien was established and permanently enjoined the execution sale. There was no question about Mr. Brieger's full ownership of the Wilson County farm when the judgment was filed. In the case at bar, the validity of Margaret's judgment lien is not challenged. Here plaintiff owned the subject property and the issue is whether plaintiff was entitled to restrain execution pending a determination whether Howard had an equity in plaintiff's property that was subject to execution and if so the extent of his equitable interest.

In *Brieger* the farm in question was setoff to defendant husband, and he became the full legal owner at the time of the divorce. In the instant case, Howard never acquired legal title to the subject property, and any interest acquired under the option agreement came into being long after the divorce decree. None of the rulings of the trial court, as we view them, operated to extinguish Howard's

equity, if there was one, or to absolve the lien of Margaret's judgment thereon. The trial court's problem in this case was to ascertain whether Howard had an equity which could not be done until other interests and the priorities thereof in the subject property were established; whereas in *Brieger* the trial court's judgment enjoining the execution sale operated to obliterate entirely the lien of the wife's child support judgment. The trial court's order in the case at bar did not operate to extinguish Margaret's lien but only restrained the sale of the property at the instance of the owner thereof.

We turn next to Margaret's contentions concerning the trial court's approval of the private sale to Jerry L. Andrew. While Margaret claims the trial court erred in approving the private sale, the thrust of her argument goes to the disposition of the proceeds rather than insisting that the sale be set aside.

As previously noted, a contract of sale was executed on January 27, 1970, showing Howard and Dorothy Lee Washburn as sellers and Jerry L. Andrew as purchaser, notwithstanding the fact that plaintiff claimed to be the owner when the action was filed on January 15, and in fact conveyed the property to Andrew by its deed, as shown by the report of sale made to the court on June 19, 1970. Margaret vigorously complains concerning plaintiff's charge of a six percent sales commission for selling its own property, the effect of which was to deplete Howard's interest in the amount of $3,240.00. She further says that under the terms of the contract the real estate commission was only a personal obligation of Howard's rather than a lien on his equity, which could not intervene as to her. Margaret further complains that the accumulation of interest also worked a diminution in value of Howard's equity, thus depriving her of her judgment lien to that extent.

Margaret argues that insofar as Howard might attempt to transfer the property to Andrew so as to defeat her judgment lien against his equity, such transfer was and would be a nullity with respect to the priority of her lien.

When Howard executed the contract of sale to Andrew and agreed to pay plaintiff a commission on January 27, 1970, both he and plaintiff were well aware of Margaret's attempt to enforce her lien by execution sale on January 20, 1970. Howard had filed his answer in this action on January 23 in which he claimed an interest in the property—should he be permitted at this juncture to encumber his interest by agreeing to pay plaintiff, the legal

owner of the property, a real estate commission and thus deprive Margaret of her lien to that extent? We believe not. A judgment lien operates to give the judgment creditor priority over other adverse interests subsequently acquired and precludes the subsequent disposal or encumbrance of the property from operating to prejudice the judgment creditor. (46 Am. Jur. 2d, Judgments, § 243, p. 472; *Shinn v. Shinn*, 42 Kan. 1, 21 Pac. 813.) On this point we note the inconsistent positions taken by plaintiff in first justifying its right to a restraining order on January 15, 1970, as owner of the subject property and then a few days later, on January 27, 1970, claiming a sales commission as a realtor for Howard, thus enhancing plaintiff's interest by depleting Howard's interest, which in turn resulted in the diminution of Margaret's lien. In accord with what has been said the trial court's judgment establishing priorities is modified with respect to plaintiff's real estate sales commission.

Regarding Margaret's contention concerning the accrual of interest and taxes, plaintiff's rights as to these matters stemmed from the option agreement rather than from a subsequent separate personal agreement as in the case of the sales commission. The option agreement provided that if the premises were occupied without payments being made for taxes, special assessments, etc., the plaintiff (first party)—

". . . [S]hall have the right to re-possess said premises. In the event second party shall occupy said premises under this agreement, without making the payments herein provided to be made for taxes, special assessments, tax bills and insurance, first party shall have the right to recover from second party the amount thereof during such occupancy, with interest at ten per cent per annum thereon, or add the amount thereof and said interest to the purchase price hereinbefore specified. . . ."

The evidence showed that Howard occupied the premises until June 1970 without making payments, thus the additions to the option agreement price are in accord with the terms of the contract. Since Howard's interest, subject to Margaret's lien, must be measured by the terms of the option agreement it follows that Margaret's lien is inferior to plaintiff's claim in this regard.

Margaret claims the trial court erred in determining that Bank's mortgage was prior to her lien, particularly as to the extent of the new money involved in the subsequent mortgage executed on August 23, and recorded on August 29, 1967. As previously noted, Howard and Dorothy Lee executed the option agreement with

plaintiff on August 9, 1967. Margaret claims her judgment lien intervened. On this point the trial court found as follows:

"The evidence was that the first mortgage was a construction mortgage securing a note falling due on April 27, 1967, and that this loan was renewed for an additional six months. It was unpaid and of record on August 9, 1967. The Washburns did not have sufficient money to purchase the property and apparently could not get financing for the amount. In order to consummate the sale, therefore, the plaintiff seller, entered into the option agreement for the sale to the Washburns and on the same day made application to the Bank for a loan sufficient to renew the construction mortgage and to give the seller some money out of its investment in the property. The new mortgage was subsequently made for a ten-year term and the payments were tied in to the payments due under the option contract. The note and mortgage were executed on August 23, 1967, and recorded on August 29, 1967, after Washburn's own attorney and office associate furnished a supplemental opinion to the Bank that the new mortgage was a first lien. Regardless of the fact that the new mortgage was not executed and recorded until after the date the Washburns took possession of the property and until one day after the first mortgage had been released of record, the new note and mortgage were part and parcel of a single overall transaction by which the Washburns purchased the property. While there is some dispute in the evidence, it does not seem credible that the Washburns were not aware of this financing agreement, particularly in view of the fact their own attorney furnished the supplemental opinion to the Bank. The Washburns benefited from the transaction and did not and cannot now complain of the arrangement by which their purchase was made possible, and the judgment creditor has no greater rights than the Washburns. In equity, the Bank's mortgage should not be subject to the lien of the judgment creditor under these circumstances."

We believe the trial court fully and correctly resolved the issue. In *Potwin State Bank v. Ward*, 183 Kan. 475, 327 P. 2d 1091, 80 A. L. R. 2d 166, we held:

"Whether the taking of a new mortgage in place of a prior one amounts to an extinguishment thereof depends upon the intention of the parties, and the acceptance by a mortgagee of a new mortgage does not amount to a payment or satisfaction and does not deprive him of his right to have the lien of the prior mortgage continued as against an intervening lien, in the absence of an intention to give priority to the intervening lien and the absence of paramount equities." (Syl. ¶ 5.)

*Prairie State Bank v. Safford*, 140 Kan. 339, 36 P. 2d 1015, was an action to foreclose a real estate mortgage wherein it was held:

". . . [R]elease of a prior mortgage, and the taking of the mortgage sought to be foreclosed, did not render the lien for the indebtedness secured by the mortgages inferior to the lien of a judgment intervening between the giving of the old mortgage and the giving of the new." (Syl.)

The Bank's subsequent loan made possible Howard's acquisition of some interest in the property through the option agreement. But

for Bank's mortgage the sale represented by the option agreement could not have been consummated and no interest in the property could have accrued to Howard, thus there was no interest of Howard's at this juncture upon which Margaret's lien could intervene so as to be superior to either Bank's mortgage or plaintiff's rights either as owner or under the option agreement. However, this cannot be said of plaintiff's rights under a subsequent collateral agreement with Howard for a real estate sales commission which would have operated to prejudice Margaret's lien.

Finally, Margaret claims the trial court erred in sustaining plaintiff's motion for summary judgment directed at her counterclaim, which she says stated a cause of action for abuse of process. Plaintiff, on the other hand, says that if the counterclaim stated any cause of action it was in malicious prosecution. In view of our holding that the issuance of the restraining order, under the circumstances, was proper an action on either theory could not be maintained. The nucleus of each theory is succinctly stated in 1 Am. Jur. 2d, Abuse of Process, § 2:

". . . An action for abuse of process differs from an action for malicious prosecution in that the latter is concerned with maliciously causing process to issue, while the former is concerned with the improper use of process after it has been issued. Thus it is said in substance that the distinction between the two is that malicious use of process is the employment of process for its ostensible purpose, but without reasonable or probable cause, whereas the malicious abuse of process is the employment of a process in a manner not contemplated by law, or to obtain an object which such a process is not intended by law to effect." (pp. 250-251.)

In *Ahring v. White*, 156 Kan. 60, 131 P. 2d 699, this court said:

"An action for malicious prosecution of a civil suit differs from an action for damages for abuse of process. (*McClenny v. Inverarity*, 80 Kan. 569, 103 Pac. 82.) In abuse of process it is said the gist of the tort is not commencing an action or causing process to issue without justification, but misusing or misapplying process, justified in itself, for an end other than that which it was designed to accomplish. (Prosser on Torts, 892)." (p. 63.)

In the case at bar process was neither issued without justification nor misused to accomplish an end for which it was not designed to accomplish. The trial court properly sustained plaintiff's motion for summary judgment on Margaret's counterclaim.

The judgment of the trial court is modified insofar as the six percent real estate sales commission which Howard agreed to pay to plaintiff is given priority over the judgment lien of Margaret, in all other respects the judgment is affirmed.