THE STATE OF KANSAS V. ROBERT L. HINCHMAN.

No. 14,668.    (37 Pac. 186.)

SYLLABUS BY THE COURT.

INFORMATION—*Murder*—*Formal Conclusion.*    Under the statutes of this state prescribing what criminal pleadings shall contain it is not necessary that an information for murder shall conclude according to the ancient common-law formula for indictments: "and so the prosecuting attorney aforesaid *upon his oath* doth say," etc.; and an omission of the italicized words from a properly verified information will not vitiate it.

Appeal from Doniphan district court; WILLIAM I. STUART, judge.    Opinion filed October 6, 1906.    Affirmed.

*C. C. Coleman*, attorney-general, and *S. M. Brewster*, county attorney, for The State.

*Arthur C. Bell*, and *Waggener, Doster & Orr*, for appellant.

The opinion of the court was delivered by

BURCH, J.: The record in this case recites the proceedings whereby a man was convicted and sentenced to the penitentiary for twenty-five years for killing his wife in a conflict occasioned by the passion of each for the possession of their adopted child.

Domestic infelicity caused the husband and wife to separate.    She went to live at her mother's home and there kept and cherished the innocent cause of her death.    On the morning of the fateful day the husband made an effort to obtain possession of the child, but failed, whereupon he procured from a justice of the peace a warrant for his wife's arrest.    He then sought to borrow a pistol from an acquaintance, but was refused.    Another person to whom he applied lent him a weapon.    He said that anything he did would be in self-defense.    He then went to his wife's home, and was soon followed by two armed constables, who sought to raise a posse of the neighbors, but failed.

The three men deployed themselves about the premises, but one of the constables soon went away in the belief that the woman had decamped. The defendant, having been directed by the remaining constable to do so, went to the east side of the house, while the constable himself proceeded to a door on the south side of the building near its southwest corner. Finding the object of the quest to be within, the officer promised her immunity from harm if she would open the door, which she did. He commenced reading the warrant to her, when the defendant left his post, came upon the porch where the constable stood, and with the blade of his knife opened the screen door separating him and the officer from his victim. The woman was armed, and pistol shots were rapidly exchanged between husband and wife. She fell, mortally wounded. He strode into the house, gathered up the child, and went away. The constable took his hat in his hand and ran. On the trial the defendant's plea was self-defense, and that theory of the case is maintained in the brief filed for the defendant in this appeal.

It is not necessary to review the evidence for the purpose of elucidating its incriminating force. The testimony is conflicting upon the most important features of the encounter. The jurors have chosen whom of the witnesses they preferred to believe. There appears to have been nothing arbitrary in their choosing, and this court cannot say they were wrong. The verdict of guilty is amply sustained.

Cross-examination of the state's witnesses was not unduly restricted. It is not intimated that the sheriff was engaged in the suppression of evidence, and if he were not his reason for omitting to bring into court the screen-door, which he described fully and which was readily obtainable, was not important. The witness Heeny's knowledge of the Hinchmans and their difficulties was sufficiently probed. The attempts to infiltrate the record with insinuations against the virtue of the murdered woman were all improper. Mrs.

The State v. Hinchman.

Stamm testified that after Mrs. Hinchman's return from Pennsylvania Hinchman came to see her, bringing McCoy with him; that afterward Mrs. Hinchman went to see her husband, and that she carried no pistol. Other questions propounded to this witness are not credited with any importance in the brief and none is apparent. It made no difference in the case what unexpressed ideas were in the mind of Miss Cochran while Mrs. Hinchman sat, revolver in hand, behind locked doors and the defendant and the constables executed their maneuvers on the outside.

No evidence of importance offered on behalf of the defendant was excluded. Leaman Coy did testify once to the threats of the deceased, and that was sufficient. The defendant claims to have based his conduct upon a certain state of facts presenting itself to him at the time of the killing. This state of facts, he says, included an attempt on the part of his wife to shoot him before he fired at all. Having acted upon much later information, communicated in a much more impressive manner, it was of little consequence that Mrs. Hinchman had a pistol once some months before. The record shows the defendant detailed in full the facts relating to his opportunity to retreat, and that ultimately he gave his opinion upon them. Hence, assuming his conclusion to be admissible, the refusal to allow him to express it in the first instance was not prejudicial.

The court committed no error in refusing instructions asked by the defendant. The legal principles suggested by those numbered 4 and 11 were correctly stated by the court in instructions given. As declared in his brief and in his testimony, the defendant claimed to be acting in self-defense and not in defense of his child, and he described no state of facts presenting even the phantom of a necessity for shooting his wife to save his child. Therefore the obtrusion of this subject into instruction No. 6 vitiated it. The only purpose of instruction No. 16 was to give legal sanction to the conduct of the defendant and

the constables in their invasion of the Stamm premises. The court was probably of the opinion the proposed arrest of Mrs. Hinchman was understood to be a mere device to procure the custody of the child, and hence that the complaint and warrant conferred no lawful authority; therefore the jury were instructed that those documents could be considered only as tending to show good faith on the part of those who attempted to execute the process. But the court instructed the jury that even though the defendant went, without lawful authority, upon the premises where Mrs. Hinchman was, still if he believed he was legally there his right of self-defense would not be impaired; if assaulted he was not bound to retreat, but could stand his ground and resist with such force as reasonably appeared to be necessary, and do this even though his assailant were a woman and his wife. If the process were technically legal but the constables were not acting in good faith under it—were actually abusing it—they were trespassers. If they were acting in good faith their attitude was made the same as if the process were legal, even though invalid. Hence the instructions given were sufficient for the constables, who were not on trial. The defendant makes no claim that he did the shooting in any official capacity, or under the compulsion of any officer. If he did not go there in good faith, but went there to assist in the abuse of legal process, he was a trespasser. If he acted in good faith he was accorded the same rights as any person rightfully stationed and wrongfully assailed. The guilt or innocence of the defendant must finally depend upon what occurred in immediate connection with the firing of the fatal shot, and nothing but the clearest prejudice in giving or refusing instructions bearing upon other matters can make the judgment subject to reversal.

The instructions given were not erroneous. The criticisms upon them are chiefly verbal. The context shows the meaning of the expression "in the wrong"

to be clearly equivalent to making the first assault with a pistol. The word "affray" is shown by the same context to mean the shooting at each other by Mr. and Mrs. Hinchman. ⁻ The expression "force the belief upon the mind" was used to make the distinction between having some tendency to induce belief and actually generating belief. The latter part of the twenty-second instruction, being merely explanatory and illustrative of accurate and positive enunciations of the law elsewhere clearly and correctly made, was not misleading, and the same is true of the twenty-fourth instruction. The twenty-third instruction is not open to the objection made to it. The effect of the thirty-sixth instruction has already been discussed.

The information is attacked because it does not conclude according to the formula deemed indispensable in indictments at common law: "and so the prosecuting attorney aforesaid *upon his oath* doth say," etc. The statutes of this state prescribe what an information shall contain, and devest it of all technicalities of form. The allegations of fact made in the charging part distinguish the offense, and when verified by the prosecuting officer every statement in it is upon his oath. Therefore an omission of the italicized words will not vitiate it. The majority opinion in the case of *State v. Coleman,* 186 Mo. 151, 84 S. W. 978, 69 L. R. A. 381, is disapproved.

The judgment of the district court is affirmed.

All the Justices concurring.