HENRY McCLENNY v. DAVID W. INVERARITY *et al.*

No. 16,114.

SYLLABUS BY THE COURT.

OFFICE AND OFFICERS—*False Imprisonment—Abuse of Process—Extortion.* An officer is protected by valid process when he uses it for a legitimate purpose in executing its mandate, but it is not a protection for the extortion of money or other abuses.

Error from Jefferson district court; MARSHALL GEPHART, judge. Opinion filed July 3, 1909. Reversed.

STATEMENT.

THE plaintiff, Henry McClenny, sued the defendants, Inverarity and Dedrick, for damages for conspiracy, abuse of process, false imprisonment, intimidation and

extortion, whereby they obtained from him a sum of money.

The plaintiff had given to Inverarity a note for $175, secured by a chattel mortgage given and recorded in Jefferson county, where the parties then lived. Afterward the plaintiff moved to Gove county, taking with him the mortgaged property, contrary to a stipulation in the mortgage that it should remain in Jefferson county. Inverarity demanded payment and received a part of the amount, leaving about $145 due. Some time after this he made complaint before a justice of the peace in Jefferson county against the plaintiff for fraudulently disposing of the mortgaged property, and caused a warrant for his arrest to be placed in the hands of defendant Dedrick, who proceeded to Gove county to make the arrest. Dedrick secured the assistance of a local constable, armed with a revolver. They found the plaintiff with his team in the street, and Dedrick told him that he had a warrant for him; that it was for a very grave charge—for moving mortgaged property, but that there was a way out of it. The plaintiff asked Dedrick what that way was, and was told that the county attorney had demanded that the constable should bring him or $250 in money. Upon the suggestion of the plaintiff that he did not have the $250, and that he supposed that he would have to go with the constable, the latter asked him what property he had, and proposed that they go to dinner and "see about it." The local constable then suggested that they go to the office of a Mr. Heiney, where the plaintiff might borrow the money, and all three proceeded to that office. The plaintiff there related the circumstances, when Heiney asked of Dedrick if he had brought the note. His response was that he had not, but that he had orders from the county attorney to bring McClenny back or $250, and added, "I am prepared to take him," and exhibited hand-cuffs. The constable allowed the plaintiff to go to dinner upon

Heiney's promise that he would have him there by train time or would pay the $250. On his return from dinner the plaintiff arranged for the money with Mr. Heiney, who gave his check to Dedrick for $250, made payable to the order of the justice of the peace who had issued the warrant. Dedrick promised to send an itemized account of the note and costs, and the balance of the $250, if any should remain. He said that his mileage would be about $70.

Dedrick thereupon released the plaintiff, returned to Jefferson county, and handed the check to the justice for his indorsement. This indorsement having been made, Inverarity drew the money upon the check, paid the constable the amount claimed by him as costs and fees, paid the justice $5 costs, and retained the amount claimed to be due upon the note, which he marked "paid" and mailed to the plaintiff. No statement was sent to the plaintiff nor was any balance of the money returned.

The county attorney testified that he drew the complaint after consultation with Inverarity, but that he did not authorize any adjustment of the matter and did not direct the constable to bring back McClenny or the money. The plaintiff consulted with an attorney after the check had been given and before Dedrick left Gove county. No steps were taken by him or by Heiney to stop this payment.

The court sustained a demurrer to the plaintiff's evidence showing substantially the foregoing facts. The plaintiff brings the case here for review.

*D. H. Morse,* and *Henry Keeler,* for the plaintiff in error.

*H. N. Casebier,* for the defendants in error.

The opinion of the court was delivered by

BENSON, J.: The evidence disclosed the fact that a warrant for the arrest of the plaintiff upon a criminal charge was used to collect a debt, and, it seems, to ex-

tort an additional amount. The justification suggested is that the prosecution was begun by advice of the county attorney, and that the warrant was good upon its face. Whatever the original motive may have been, the subsequent conduct of the defendants reveals an abuse of the process. The prompt suggestion of the constable, after first impressing the plaintiff with the gravity of the supposed offense, that "there is a way out," was such a publication of the motive to extort money as to warrant the inference that this was the real purpose of the proceeding—a purpose condemned alike by the law and good morals. A display of force was used to intimidate, not to enforce obedience to the arrest, for no opposition had appeared. The participation of the complaining witness in this wrongful conduct might have been inferred by the jury from the circumstances proved. The justice's authority appears to have been used only so far as was necessary to accomplish this end. After the money had been received that authority was ignored, and the writ was not returned nor the costs taxed. The rights of the alleged criminal, as well as of the public, were disregarded. Supposed mileage to the amount of $70, and some other costs, so-called, were paid to the constable by Inverarity, and thus the $250, less the $5 paid to the justice, was divided between the defendants.

The fact that the plaintiff consulted a lawyer while the constable was waiting for a train after receiving the check, and did not take steps to stop its payment, can not bar his right to recover. It does not follow that the plaintiff should not recover had payment been suspended. The $250 may be an item of damages, but not necessarily the only one. The man was publicly held in custody, threats made, a display of force indulged in, and intimidating methods used. There is no arbitrary rule of law restricting the recovery to the sum wrongfully obtained. Again, the plaintiff had no power to stop the payment of the check. It was drawn by a

third person on his own account. It is true the drawer might have observed the plaintiff's request, if it had been made, to stop payment, but it is probable that the same fear that prompted the plaintiff to cause its delivery was sufficient to prevent him from asking that payment be stopped. He may have been well or ill advised, but the defendants can have no advantage because he did not do all that he might have done to prevent the full consummation of their ulterior designs.

It is argued that the defendants are protected because the process was valid upon its face. An officer is protected by valid process only when he uses it for a legitimate purpose in executing its mandate, but it is not a protection for extortion or other abuses. (1 Cooley, Torts, 3d ed., 354.)

"Two elements are necessary to an action for the malicious abuse of legal process: First, the existence of an ulterior purpose; and, second, an act in the use of the process not proper in the regular prosecution of the proceeding. Regular and legitimate use of process, though with a bad intention, is not a malicious abuse of process." (1 Cooley, Torts, 3d ed., 355.)

(See, also, *Bonney v. King,* 201 Ill. 47; Addison, Torts, 8th ed., 31; *Slomer v. The People,* 25 Ill. 70; *Wood v. Graves,* 144 Mass. 365; *Mayer v. Walter,* 64 Pa. St. 283.)

"Where an officer acting under process is guilty of such an improper and illegal exercise of authority under it as will warrant the conclusion that he intended from the first to use his legal authority as a cover for his illegal conduct, he becomes a trespasser *ab initio,* and is liable the same as if he had acted without process." (*Wurmser v. Stone,* 1 Kan. App. 131, 135.)

The principle is stated thus in *The State v. Hinchman,* 74 Kan. 419:

"If the process were technically legal but the constables were not acting in good faith under it—were actually abusing it—they were trespassers. . . . If he did not go there in good faith, but went there to assist in the abuse of legal process, he was a trespasser.

If he acted in good faith he was accorded the same rights as any person rightfully stationed and wrongfully assailed." (Page 422.)

The evidence shows that the warrant was used to extort money and not to bring the alleged offender before the magistrate—to break the law and not to enforce it, and the evidence tended to show that this was the purpose for which the warrant was obtained. That it was regular upon its face is no protection against the consequences of such wrongful conduct.

The demurrer to the evidence should have been overruled. The judgment is therefore reversed, and the cause remanded for further proceedings.