**Daniel L. TAPPEN, M. D.,
Plaintiff-Appellant,**

v.

**Law Lamar AGER, M. D.,
Defendant-Appellee.**

**No. 78–1233.**

United States Court of Appeals,
Tenth Circuit.

Argued April 17, 1979.
Decided May 25, 1979.

Robert D. Ochs of Fisher, Ralston, Ochs & Heck, P. A., Topeka, Kan. (Eugene B. Ralston of Fisher, Ralston, Ochs & Heck, P. A., Topeka, Kan., on brief), for plaintiff-appellant.

Victor A. Bergman of Schnider, Shamberg & May, Chartered, Kansas City, Kan. (John E. Shamberg and Joel K. Goldman of Schnider, Shamberg & May, Chartered, Kansas City, Kan., on brief), for defendant-appellee.

Before HOLLOWAY, DOYLE and LOGAN, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

The question for decision in this case is whether the trial court erred in dismissing the cause of action of plaintiff-appellant herein, which suit was brought by a doctor claiming abuse of process and various forms of such cause of action. The crucial fact is that the plaintiff's complaint was an attack on a pending action, one that had not been disposed of, and which action sounded in malpractice against a physician (Dr. Tappen).

The case before us is an unusual one. There were two complaints. Law Lamar Ager, M.D., as guardian of Emily Ager, filed both of them. Number 77–2039 was a claim on behalf of Emily Ager against Jane C. Stormont Hospital and Training School for Nurses and Dr. Daniel L. Tappen, who has brought the present action. It charged malpractice growing out of Dr. Tappen's alleged misconduct at the time of Emily Ager's birth. Number 77–2040 was a wrongful death action for the death of Loyer Z. Ager, Emily's mother, which occurred at the time of Emily's birth. Soon after the filing of these two complaints (and without waiting for a disposition), Dr. Tappen brought the present action as a diversity of citizenship case. The theory on which Dr. Tappen's case proceeds is that the two actions against him by defendant Ager were frivolous, baseless, resulted from inadequate investigation, and constituted misuse of court process and violation of a legal duty.

There were five counts:

The first sounded in negligence. It alleged the failure to make a reasonable investigation and failure to follow the advice of medical consultants prior to the filing of the malpractice suit; that the legal result was a violation of a legal duty owed to him by appellee's lawyer.

The second count alleged that defendant was guilty of abuse of process.

The third count charges that the defendant knew that there was no actionable conduct on the part of plaintiff Tappen; that he knew that there was no negligence and, nevertheless, intentionally filed the suit.

The fourth count sounds in invasion of privacy. It alleges that the defendant libeled plaintiff.

The fifth count seeks punitive damages arising from gross and wanton conduct or outrageous conduct.

The cause came before the trial court, the United States District Court for Kansas, on defendant's motion to dismiss. The argument for dismissal, which argument was accepted by the trial court, was that plaintiff had failed to allege in any of the four substantive counts that defendant had committed a tort in Kansas. As a result thereof, the long-arm jurisdiction under the relevant statute, Kan. Stat. Ann. § 60–308(b)(2), calling for the commission of tortious acts within a state, is inapplicable. The motion required the trial court to test the legal sufficiency of the several counts.

## I.

The first question is whether the trial court committed error in ruling that there was no recognizable negligent tort which arose from prosecuting a lawsuit.

This cause is a diversity action and is, therefore, governed by Kansas law, and to date the Supreme Court of Kansas has not ruled on the issues which are before us. Under these circumstances, there is an inference that the trial judge, a Kansas resident and lawyer, is in a particularly favorable position to declare the law of Kansas, and we proceed with this doctrine in mind.

■ The elements of a malicious prosecution case are set forth in *Thompson v. General Finance Co.*, 205 Kan. 76, 468 P.2d 269, 282 (1970). In that case the Kansas Supreme Court delineated the essential requirements (of malicious prosecution) as follows:

[1] that the defendant instituted the proceeding of which complaint is made, [2] that the defendant in so doing acted without probable cause and with malice, [3] that the proceeding terminated in favor of the plaintiff, and [4] that he sustained damages.

It is conceded that this present case does not satisfy the requisites set forth in *Thompson*. Appellant, however, would have this court recognize the existence of a duty running from plaintiff to defendant to use reasonable care in the filing of a lawsuit. Also, appellant contends that the Kansas court gave some recognition to the existence of a duty of the litigant to make a careful investigation. An examination of *Thompson*, however, reveals that there existed no basis in the Kansas law for finding that such a duty existed.

The trial court determined that the plaintiff filed a negligence action so as to avoid the "stringent proof requirements of a malicious prosecution action." See the opinion of Judge Rogers in *Tappen v. Ager*, No. 77–4096, slip. op. at 5 (D.Kan. Jan. 27, 1978). The trial court also held that there was a compelling policy supporting nonrecognition of such a duty and that it would discourage free access to the court.

■ Although there are no Kansas decisions which are directly in point, the case law from other jurisdictions supports the position which the trial court took that an attorney engaged in discharging his professional duties to his client is not held liable for negligence toward a third person, for the reason that his paramount and exclusive duty is to his client. Concededly, there has been some relaxation of this doctrine in some states, but this arises in cases where the attorney's acts benefit a third party. No such relaxation is found where, as here, the relationship is an adversary one. In this type of case the lawyer must be loyal to his client, and there is no room for existence of a duty running to the adversary.

A leading case in this area is *Norton v. Hines*, 49 Cal.App.3d 917, 123 Cal.Rptr. 237 (1975). It rejected the negligence theory in a fact situation which was more compelling than in this one. There the lawyer for the plaintiff admitted that he had no evidence to support the complaint, stating that the action had been pursued through trial in the hope that some basis for the action would develop or turn up. The court held that malicious prosecution was the only possible avenue considering the strong public policy favoring access to the courts. At the same time, the California court criticized the filing of a baseless lawsuit. Notwithstanding the existence of a policy against the filing of meritless actions, in this instance it subverted a more important public policy by

allowing an attorney to be sued for the bringing of such a suit; that the attorney should enjoy a privilege equal to that of his client. To rule differently would discourage and impede an important right, access to the courts.

The case of *Bickel v. Mackie*, 447 F.Supp. 1376 (N.D.Iowa 1978), also commenced as a malpractice case, but by the time the retaliatory suit was filed, the malpractice suit had been determined unfavorably to the plaintiff. The physician sought alleged malicious prosecution, abuse of process, negligent practice of the law, failure to comply with the Code of Professional Responsibility and conspiracy to do harm. An amended count charged that the malpractice suit had been filed recklessly and with heedless disregard, and that the plaintiff suffered mental anguish, damage to his professional reputation and expenditures of time to prepare a defense. The district court, Judge McManus, held that Iowa law applied and that under that law plaintiff failed to state a cause of action for malicious prosecution; that negligence was an improper standard on which to base liability from an attorney to an adverse party; that the allegation of prosecution without probable cause is a claim for malicious prosecution, not abuse of discretion; that the Canon of Ethics requiring a lawyer to stay within the bounds of law does not create a cause of action in favor of a third party; and that where a plaintiff suing in tort fails to state a claim on which relief can be granted, based on conspiracy, that must also fall.

Perhaps the most significant part of the *Bickel* case was the holding that negligence is an improper standard on which to base liability of an attorney to an adverse party. The court reasoned that an adverse party cannot, under the law, rely on the opposing lawyer to protect him from harm. In other words, negligence does not exist in the abstract, it contemplates a legal duty owing from one party to another and the violation of that duty by the person owing it. In the present context, the duty is owed by the lawyer to his client and to the legal system. It does not form a basis for a suit by an opposing party.

The California case of *Norton v. Hines, supra,* was cited and relied on for the proposition that an adverse party cannot recover against an attorney for the adversary in the particular lawsuit. Since the lawyer is responsible to his client only, he does not owe a duty to the adverse party.

The appellant believes that support for his position is to be found in *Thompson v. General Finance Co., supra.* Not so. *Thompson* does not stand for the existence of a duty owed by an adversary attorney to one whom is on the other side of the case. As pointed out above, the negligent tort arises in a narrow context. It requires two people to be in a relationship whereby one person owed a duty of prudent conduct to the other. The adversary nature of the lawsuit is strongly at odds with this concept. The lawyer's duty of care is to his client and to the court.

## II.

### DID THE TRIAL COURT COMMIT ERROR IN CONCLUDING THAT THE PLAINTIFF–APPELLANT FAILED TO SET FORTH A LEGAL CAUSE OF ACTION FOR ABUSE OF PROCESS?

The tort of abuse of process is narrow in scope. The tendency is to jump to the conclusion that every lawsuit that misfires or fails is an abuse of process. Needless to say, this is not true. In fact, the remedy is a very narrow one, and so the filing of an action which proves insufficient in law of itself does not fulfill the requirements. Malicious prosecution is more likely in this situation, although there is no guarantee that it will apply unless the filing of the case that failed was accompanied by malice. The abuse of process requirements, although somewhat similar, are far different.

The prerequisites of this latter claim are, first, that there must have been an ulterior purpose in the filing of the action or in the use of whatever process was employed. W. Prosser, *Law of Torts* § 121 (4th ed. 1971), at 857, states that the ulteri-

or purpose or motive must exist outside of the process itself. Thus, the objective to obtain damages is within the four corners of the action. This is the object of every lawsuit, and hence it cannot distinguish the abuse of process action. Prosser expresses it: " * * * there is no liability where the defendant has done nothing more than carry out the process to its logical conclusion, even though with bad intentions." *Id.*

Second, it is necessary to have a willful act in the use of the process, one not proper in the course of the regular conduct of the proceeding.

> The improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, * * * There is, in other words, a form of extortion, and it is what is done in the course of negotiation, rather than the issuance of any former use of the process itself, which constitutes the tort." [1]

*Id.*

The Kansas court has, in the case of *Jackson & Scherer, Inc. v. Washburn*, 209 Kan. 321, 496 P.2d 1358, 1366 (1972), adhered to this doctrine. It states that abuse of process is concerned with process employed "in a manner not contemplated by law, or to obtain an object which such process is not intended by law to effect."

In *Ahring v. White*, 156 Kan. 60, 131 P.2d 699 (1942), the Kansas court in a malicious prosecution case distinguished abuse of process from malicious prosecution, saying:

> An action for malicious prosecution of a civil suit differs from an action for damages for abuse of process. *McClenny v. Inverarity*, 80 Kan. 569, 103 P. 82, 24 L.R.A., N.S., 301. In abuse of process it

is said the gist of the tort is not commencing an action or causing process to issue without justification, but misusing or misapplying process, justified in itself, for an end other than that which it was designed to accomplish. Prosser on Torts, page 892.

*Id.* at 702.

The district court also properly distinguished abuse of process from malicious prosecution. In holding that plaintiff's allegations were insufficient, Judge Rogers said:

> Plaintiff has not alleged an ulterior purpose or use of process not proper in a regular proceeding. Plaintiff has simply alleged that defendant is guilty of filing a baseless lawsuit. This may begin to state a claim for malicious prosecution, but it does not state a cause of action for abuse of process. 1 Am.Jur.2d *Abuse of Process* § 6, p. 255 (1962). In Note, *Physician Countersuits: Malicious Prosecution, Defamation and Abuse of Process as Remedies for Meritless Medical Malpractice Suits*, 45 U.Cin.L.Rev. 605, 620 (1976), we find the following:

>> The bringing of a malpractice action because of some imagined physical injury, however groundless, would not be a sufficient abuse since the judicial system is designed to grant compensation for damages due to malpractice. As one court has stated, "[i]f [defendant] uses the process of the court for its proper purpose, though there is malice in his heart, there is no abuse of process." [citing *Hauser v. Bartow*, 273 N.Y. 370, 374, 7 N.E.2d 268, 269 (1937)] [2]

---

1. The author gives examples which show the nature and character of the improper purpose: The cases have involved such extortion by means of attachment, execution, garnishment, or sequestration proceedings, or arrest of the person, or criminal prosecution, or even such infrequent cases as the use of a subpoena for the collection of a debt. *Id.* at 857–58.

2. The quote from Birnbaum, *Physicians Counterattack: Liability of Lawyers for Instituting Unjustified Medical Malpractice Actions*, 45

Fordham L.Rev. 1003 (1977), discusses the meaning of ulterior motive and collateral purpose as follows:

> Generally, where a physician considers a malpractice action vexatious, harassing and brought merely as a nuisance suit to coerce a settlement, he will be unable to recover for abuse of process. Every action is somewhat coercive and puts a party to some inconvenience and expense in defending it. Moreover, institution of a weak or tenuous claim should not, without more, give rise to an abuse of

There is nothing in this record to indicate even the possibility of an abuse of process action on the part of defendant-appellee.

■ Surprisingly, it is the plaintiff-appellant's (Dr. Tappen's) case which suggests the possibility of an ulterior motive or purpose, namely, to use the court action as a sword as well as a shield to help the plaintiff abort the action in malpractice brought by Ager against Tappen. We do not say that the proof will establish this. We say it shows some indication, and we mention it only for illustrative purposes. We are in full agreement with the court's action in rejecting the plaintiff's claim in Count I alleging an abuse of process.

### III.

### WAS THE CLAIM SOUNDING IN INVASION OF PRIVACY ONE WHICH WAS COGNIZABLE UNDER THE LAW OF KANSAS?

Appellant maintains that Kansas law recognizes the existence of an actionable tort based upon the negligent or intentional filing of litigation, which litigation is without merit. He maintains that this is a tort which has elements in common with the torts of invasion of privacy. He relies on *Froelich v. Adair*, 213 Kan. 357, 516 P.2d 993 (1973). He also relies on the Kansas case of *Dotson v. McLaughlin*, 216 Kan. 201, 531 P.2d 1 (1975).

The trial court rejected this argument out of hand noting that in most actions filed there is an intent and that if the intent to file a lawsuit were the basis of an independent tort, it would serve to greatly multiply litigation. The trial court's conclusion was that the giving of publicity which places a person in a false light, a light which is offensive to a reasonable man, is governed by substantially the same principles as the suit in defamation. Thus, the privilege applicable to a suit for invasion of privacy would apply.[3]

The trial court also ruled against Dr. Tappen on the claim described in *Dotson, supra*, based upon *outrageous conduct* which results in infliction of emotional distress. The Restatement of Torts Second, Subsection 1 of § 46, provides that one who by carrying out extreme and outrageous conduct recklessly causes sufficient emotional distress to another is subject to liability for the distress and for bodily harm which results therefrom. To establish this tort the conduct must be so outrageous in character and extreme in degree, as to exceed the bounds of decency. It must be atrocious and intolerable in a civilized community. The test of its existence is whether the recitation of facts to an average member of the community would arouse his resentment and lead him to exclaim, "Outrageous!" This does not include, according to the Comment, mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. There exists a freedom to express an unflattering opinion, and as a matter of policy such an outlet is desirable socially.

The trial court fully considered the principles of outrageous conduct and ruled this out as a possible tort.

In *Redd v. H&R Block, Inc.*, No. 78–1197 (10th Cir. Oct. 5, 1978), the tort came under scrutiny, and it was held that the conduct complained of must be offensive in the extreme; that it must be tantamount to conduct carried out in a spirit of malice.

process action. Public policy mandates that there be free access to the courts for the redress of wrongs. If a malpractice action was instituted with probable cause, the desire of an attorney or his patient to settle the claim should not be considered a collateral purpose outside the scope of litigation. Indeed, settlement of actions is a positive goal of the courts in order to avoid unnecessary and lengthy litigation. If the original action lacks merit and has been instituted solely to coerce a settlement, the physician may, of course, have a valid malicious prosecution action. An abuse of process claim, however, will not lie unless the physician can prove that the patient or his attorney reached beyond the natural consequences of the litigation to accomplish some collateral purpose.

3. The right to file a legal action without being held liable in defamation or invasion of privacy where the plaintiff is free of malice is well recognized.

382

The Kansas case of *Dawson v. Associates Financial Service Co. of Kansas*, 215 Kan. 814, 529 P.2d 104 (1974), a debtor harassment situation, ruled that the actions of the tort-feasor are compensable when they would be highly offensive to a reasonable man. 529 P.2d at 111. There it was shown that there were a number of telephone calls in which the plaintiff was told that if her car was repossessed, in accordance with the defendant's threat, her credit would be ruined. This constituted grounds for a cause of action for outrageous conduct. We hasten to add that plaintiff in that case was afflicted with Multiple Sclerosis and was susceptible to emotional injury, a fact which carried great weight with the court.

■ It is apparent that the conduct in the instant case is not comparable to that which was present in *Dawson*. We are not saying that a lawsuit could not ever be the basis for the tort which we now consider. We are saying that this one does not describe conduct capable of justifying a lawsuit in outrageous conduct.

### IV.

WAS THE TRIAL COURT IN ERROR IN REJECTING APPELLANT'S CONTENTION THAT DEFENDANT–APPELLEE HAD BEEN GUILTY OF GROSS AND WANTON CONDUCT IN FILING A SUIT?

■ The trial court summarily dismissed this final contention holding that the case was not worthy to be submitted to a jury on the theory of gross and wanton behavior. Kansas courts hold that wanton behavior is synonymous with reckless disregard for the rights of others which, in turn, contemplates indifference to consequences. *Perry v. Schmitt*, 184 Kan. 758, 339 P.2d 36, 40 (1959). *Cf. Vaughn v. Murray*, 214 Kan. 456, 521 P.2d 262 (1974). The existence of wanton conduct depends on the actor's or tort-feasor's mental attitude. *Friesen v. Chicago, Rock Island & Pacific Railroad*, 215 Kan. 316, 524 P.2d 1141 (1974). It is essential that the actor must have been conscious of imminent danger and must

have acted with a reckless disregard, indifference and unconcern for probable consequences. 524 P.2d at 1148.

■ The essential aspect of the case which is at the bottom of the present lawsuit, that is the malpractice case, is that the plaintiff, Dr. Tappen, was wrongly accused for acting negligently when, in truth, he was not negligent. The trial court was of the opinion that this did not constitute wanton misconduct, and we agree with that conclusion. It was not error for Judge Rogers to refuse to allow the plaintiff to go to trial on such a claim. So, looking at the case in all of its aspects, although we are sympathetic to the appellant's position, and we are not without understanding as to his feelings, we must nevertheless apply the law as it exists in Kansas. We are not free to create some new rules which we would have to project as rules that the Kansas court would follow. In this case it would be highly conjectural and most unlikely that Kansas would adopt positive rules such as those which are here advocated.

Accordingly, the judgment of the district court is affirmed.