500 A.2d 1055

**PALMER FORD, INC.**

v.

**Franklin E. WOOD.**

**No. 137, Sept. Term, 1985.**

Court of Special Appeals of Maryland.

Dec. 5, 1985.

Albert D. Brault (Janet S. Zigler, and Brault, Graham, Scott, & Brault, on brief), Rockville, for appellant.

Arthur M. Wagman (Wagman & Moldawer, P.A. on brief), Rockville, for appellee.

Argued before BLOOM, ROSALYN B. BELL, and KAR-WACKI, JJ.

KARWACKI, Judge.

In this appeal we revisit the litigation between Franklin E. Wood, the appellee, and Palmer Ford, Inc., the appellant, which has raged without resolution since its institution on January 22, 1979 in the Circuit Court for Prince George's County.

### Background

On February 15, 1978 criminal proceedings pending against the appellee in the District Court of Maryland were terminated in his favor. In his circuit court suit Wood sought damages from the appellant for alleged malicious prosecution and abuse of process in connection with the criminal charges of which he had been vindicated.

Prior to trial, Palmer Ford's motion for summary judgment was granted on both claims. This Court reversed, *Wood v. Palmer Ford, Inc.*, 47 Md.App. 692, 425 A.2d 671 (1981), and remanded the case for trial.

The first trial took place on February 25–26, 1982. The jury found Palmer Ford liable to Wood both for malicious prosecution and for abuse of process and awarded compensatory damages of $100,000 and punitive damages of $400,-000. In ruling on post trial motions, the trial judge denied Palmer Ford's motion for judgment n.o.v. but ordered a remittitur of compensatory damages in the amount of $75,-000 and punitive damages in the amount of $300,000 or a new trial. Wood accepted the remittitur, and judgment for $125,000 ($25,000 compensatory and $100,000 punitive damages) was entered on March 23, 1982.

Palmer Ford appealed to this Court where the judgment was affirmed in an unreported opinion. The Court of Appeals granted certiorari and reversed this Court in part, holding that no legally sufficient evidence of malicious prosecution by Palmer Ford had been offered at the trial. *Palmer Ford, Inc. v. Wood*, 298 Md. 484, 471 A.2d 297 (1984). The Court of Appeals affirmed this Court's decision upholding the jury verdict against Palmer Ford on the

abuse of process count but, because the compensatory and punitive damages had not been allocated between the malicious prosecution claim and the abuse of process claim, the case was remanded for a trial limited to the issue of damages for abuse of process.

On January 23, 1985 the second trial began. It was short-lived; at the start of the second day, a mistrial was granted on Palmer Ford's motion. The third trial was held on February 5, 1985 and resulted in a jury verdict in favor of Wood for compensatory and punitive damages.

The factual predicate for this litigation was fully described by Judge Rodowsky in his opinion in *Palmer Ford, Inc. v. Wood, supra,* 298 Md. at 487–93, 471 A.2d 297. We will briefly review the facts before discussing the issues raised in the present appeal.

The appellee took his car to Palmer Ford for repairs on April 3, 1977. He authorized repairs at a cost of $400 as estimated in writing by Palmer Ford. A few days later, when one of the appellant's mechanics suggested that the car needed additional work, Wood authorized it but explained that he was unable to pay more than an additional $150 or $200 at the most.

Upon completion of the repairs on April 11, Wood was presented with a bill by Palmer Ford for $924. At that time, since he was unable to pay the amount demanded, Palmer Ford retained possession of the car. Later, on April 11, Wood was contacted by a Palmer Ford employee by telephone, who offered him his car in exchange for the amount of the original repair estimate. Wood hung up. The next day the same Palmer Ford employee again telephoned Wood and suggested that if Wood would place $400 in cash under a trash can in the men's room at Palmer Ford, he would find there receipts for the repairs and the keys to the car. Wood followed these instructions on April 13 and retrieved his car.

About one week later, Wood's car broke down again. He had it towed back to Palmer Ford. At that time, Palmer

Ford discovered that it had not been paid for the previous repairs and requested Wood to come in to meet with John Kirby, the company's treasurer and comptroller. Kirby informed Wood that Palmer Ford was primarily interested in clearing up their internal problems and would not prosecute him if Wood would tell him everything that had happened. Wood explained to Kirby the events which led up to the recovery of his car. The next day, April 22 or 23, Kirby advised Wood that he would have to pay the entire bill due Palmer Ford, which by this time had grown to $952, with no deduction for the $400 with which Wood had already parted.

Thereafter, Kirby contacted Wood's father by mail and Wood's mother by phone to discuss Wood's debt to Palmer Ford. Mrs. Wood met with Kirby at his office "on or about April 27" in the late afternoon. She was told that unless the repairs were paid for, her son would go to jail. She immediately made application for a $952 loan.

On April 26, Kirby reported the incident to the Prince George's County Police. The officer who took his report had died prior to the first trial, but his reports of this complaint, which were admitted in evidence at that trial, reflect that Kirby indicated "he was in favor of prosecution."

On April 27, 1977 at 1:00 p.m., Wood was arrested by the Prince George's County Police and charged with embezzlement. He paid Palmer Ford in full on May 2 with the loan money obtained by his mother. However, he could not obtain his car at that time because it had been vandalized while parked in the Palmer Ford lot.

The charge of embezzlement was changed to false pretenses and then to grand larceny and unauthorized use of an automobile. Eventually, some ten months later, all charges against Wood were dismissed.

### The Trial Sub Judice

When the third trial began, the presiding judge informed the parties that he would not permit evidence with regard to

the circumstances surrounding the controversy over the car repairs or the manner in which Wood retrieved his car from Palmer Ford on April 13. Further, he ruled that Mrs. Wood would not be permitted to testify as to her meeting with Kirby. The trial judge instead decided that he would inform the jury that there had been a finding that Palmer Ford had abused criminal process in order to collect a civil obligation and that their task was to assess damages arising from that abuse.

The trial judge further ruled that the jury would be permitted to consider and assess punitive damages against Palmer Ford. Evidence as to the justification for the prosecution of Wood and the facts surrounding his arrest was not permitted. The trial judge took the view that Wood was not required to prove malice, reasoning that it was inferred from a finding of liability on the abuse of process count.

Both parties, unhappy with the constraints placed upon the evidence they planned to offer on the issues of compensatory and punitive damages, duly excepted to the trial court's plan for conducting the trial.

The jury returned a verdict in favor of Wood for $30,000 in compensatory damages and $100,000 in punitive damages. Palmer Ford challenges the judgment rendered on that verdict. Wood filed no cross appeal. The appellant raises the following contentions:

1. Compensatory damages which relate only to an arrest based upon probable cause are not recoverable in a claim for abuse of process.

2. Malice is not inferred from the tort of abuse of process so as to warrant consideration of punitive damages by a jury without evidence of malice, actual or implied.

3. A defendant is entitled to judgment on the issue of punitive damages where the plaintiff has not and cannot produce evidence of malice.

4. It is error to instruct the jury that they can award punitive damages if they wish to punish the defendant without instructing that they must first find malice.

5. Even if malice is inferred from abuse of process, this case should be remanded for a trial on both liability and damages since the jury otherwise can have no knowledge of the facts from which to evaluate punitive damages.

We will deal with the issue of compensatory damages first and then resolve the second, third, and fourth contentions together. As will be apparent, it will not be necessary to decide the fifth issue.

### Compensatory Damages

The sole evidence offered to support the appellee's claim for compensatory and punitive damages was his testimony and that of his mother. This testimony was received over the continuing objection of Palmer Ford.

Wood described the events of April 27, when Prince George's County police officers came to his home and asked him to accompany them to the police station to answer some questions about "what had happened at Palmer Ford." He testified that he immediately telephoned Kirby to protest but was told by Kirby that there was nothing that could be done because Palmer Ford had a policy of pursuing wrongdoers.

Wood, after being questioned for a few hours at the Hyattsville station, was arrested. This arrest was warrantless and was the initial process in Wood's criminal prosecution. *Palmer Ford, Inc. v. Wood,* 298 Md. at 513 n. 7, 471 A.2d 297. Following that arrest, he was handcuffed, processed by fingerprinting and photographs, and after an appearance before a district court commissioner, released approximately five hours later.

Wood also testified to the effects of his prosecution on his personal life. He stated that until the time of his arrest he

had been enjoying life, had been doing well in school, had a close circle of friends, maintained a job, and generally had a good attitude about his life. He related that while his prosecution continued he had difficulty functioning, missed four days from work and eventually lost his job, his grades at school dropped, he had trouble eating and sleeping, and he believed that his friends began to avoid him.

Mrs. Wood testified that prior to her son's arrest, he had been a happy and respected young man who was employed and attended the community college. She stated that as a result of his prosecution he became depressed, dejected and would not leave the house, avoiding his neighbors and friends.

In challenging the materiality of this evidence to the damages which flowed from Wood's arrest and prosecution, Palmer Ford argues that since it has been determined that probable cause existed for Wood's prosecution, it can not form the basis for an award of compensatory damage. We reject the argument and the premise on which it is based, i.e., that one of the elements of the tort of abuse of criminal process is the absence of probable cause for the initiation of the criminal process which is being abused.

> An action for abuse of process differs from actions for malicious prosecution and malicious use of process in that abuse of process is concerned with the improper use of criminal or civil process in a manner not contemplated by law after it has been issued, without the necessity of showing lack of probable cause or termination of the proceeding in favor of the plaintiff, ... (citations omitted).

*Walker v. American Security Co.*, 237 Md. 80, 87, 205 A.2d 302 (1964). For this reason, it should be emphasized that there can never be probable cause for misusing legal process, whether criminal or civil in nature. Once it has been established that legal process has been perverted by misapplication to an end for which that process was never intend-

ed, the abuser is liable for all the consequences that reasonably result from the process.

The Court of Appeals in affirming Palmer Ford's liability for abuse of process quoted Prosser, *Handbook of the Law of Torts* § 57 (4th ed. 1971) thus:

> The essential elements of the abuse of process, as the tort has developed, have been stated to be: first, an ulterior purpose, and second, a wilful act in the use of the process not proper in the regular conduct of the proceeding. Some definite act or threat not authorized by the process or aimed at an objective not legitimate in the use of the process is required; and there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions.

298 Md. at 511, 471 A.2d 297. The Court found sufficient evidence of those elements in the record of the first trial, observing:

> Mrs. Wood's testimony supports a finding that it was the purpose of Palmer Ford, acting through Kirby, to use the criminal proceedings to effect collection of the amount claimed from Wood for repairs to his car. The jury could find that Kirby had concluded by Friday, April 22, 1977, that Wood did not then have the funds to pay the repair bill and that Kirby orchestrated a campaign to utilize the criminal process in order to obtain payment. Kirby's letter to Wood's father, with its emphasis on the manner in which Wood had obtained possession of the Mustang, indicates this conclusion. At about the same time, Kirby sought a meeting with Mrs. Wood at which it could be found as a fact that he presented an ultimatum—either the bill be paid or Wood would be prosecuted and possibly jailed.
>
> From the standpoint of the second element of the tort, it has been held to be an improper use of criminal process for the creditor, or an officer of the law acting in concert with the creditor, to demand payment of a debt as a condition of the debtor's avoiding arrest, or further con-

finement, or further proceedings in a criminal prosecution (citations omitted).

298 Md. at 511–12, 471 A.2d 297.

. . . . .

As Palmer Ford views the record, this case is one in which the creditor, after initiating a criminal prosecution, even if done with the intent of producing payment, passively allowed the prosecution to proceed in the hands of public authorities. Under such circumstances, there is nothing improper in the creditor's accepting payment of the debt or a return of his property (citations omitted).

298 Md. at 513, 471 A.2d 297. .

. . . . .

The answer to Palmer Ford's argument lies in the timing of the events. Mrs. Wood said that Kirby had telephoned her at work and requested that they meet. Her estimate of the date was "about April 27." She met Kirby at Palmer Ford "the same day after work. It was in the late afternoon." The jury could find that this meeting took place after Wood's arrest at 1:00 p.m. on April 27 and thus after criminal prosecution had been commenced. It is at that meeting that Kirby was said to have demanded payment or Wood "would go to jail." We hold that the motion for a directed verdict was properly denied on Plaintiff's abuse of process claim.

298 Md. at 514, 471 A.2d 297.

This holding of the Court of Appeals conclusively established that sometime during the late afternoon of April 27, Kirby, acting on behalf of Palmer Ford at a meeting with Mr. Wood, committed "some definite act or threat not authorized by the process" which had issued at 1:00 p.m. that day. In threatening Mrs. Wood that her son "would go to jail" if the debt allegedly due Palmer Ford were not paid, Palmer Ford tainted the criminal process with its own unlawful objective. At this time the appellee was in the course of being processed at the Hyattsville police station and Palmer Ford can hardly claim that it was not responsible for what occurred there as well as for what followed

as the criminal prosecution continued for another ten months. In this regard, while discussing damages allowable for tortious abuse of process, Keeton, *Prosser and Keeton on the Law of Torts* 900 (5th ed.1984) comments:

> Although some courts might limit plaintiff's right to recover to cases in which there is some interference with property or person, interference with person has been found in an arrest that may be entirely legitimate in the sense that it may have been made with probable cause. With this liberal definition of interference, the net result appears to be that damages may be awarded to vindicate the right itself and to maintain the integrity of the judicial process. Once the plaintiff's right is established, actual damages proximately caused can be recovered, including indirect losses such as injury to financial standing and intangible losses such as "mental injury."

■ Where the issue has been presented the courts have included within the ambit of compensatory damage suffered by the victim of abuse of process recompense for humiliation, disgrace or indignity suffered as well as monetary losses incurred as a consequence of the prosecution which had been illegally perverted to accomplish the abuser's private purpose. *Baker v. Oklahoma Tire,* 344 F.Supp. 780 (D.Ark.1972); *Spellens v. Spellens,* 49 Cal.2d 210, 317 P.2d 613 (1957); *McGann v. Allen,* 105 Conn. 177, 134 A. 810 (1926); *McClenny v. Inverarity,* 80 Kan. 569, 103 P. 82 (1909); *Saliem v. Glovsky,* 132 Me. 402, 172 A. 4 (1934); *Malone v. Belcher,* 216 Mass. 209, 103 N.E. 637 (1913); *Marlatte v. Weickgenant,* 147 Mich. 266, 110 N.W. 1061 (1907); *Adelman v. Rosenbaum,* 133 Pa.Super. 386, 3 A.2d 15 (1938); *Huggins v. Winn-Dixie Greenville, Inc.,* 252 S.C. 353, 166 S.E.2d 297 (1969). In our view the trial court properly admitted the challenged evidence as material to the issue of compensatory damage.

### Punitive Damages

■ It is well established that punitive damages are recoverable in tort actions in this State, but an absolute

prerequisite to their award is evidence that the tortfeasor's conduct was characterized by malice, either actual or implied. *Montgomery Ward & Co. v. Keulemans*, 275 Md. 441, 448, 340 A.2d 705 (1975); *American Laundry Mach. v. Horan*, 45 Md.App. 97, 111–13, 412 A.2d 407 (1980). Actual (or express) malice has been described as the performance of an act without legal justification or excuse, but with an evil or rancorous motive influenced by hate, the purpose being to deliberately and willfully injure the plaintiff. *Siegman v. Equitable Trust Co.*, 267 Md. 309, 297 A.2d 758 (1972). On the other hand, implied malice may be legally inferred. In this regard, the Court of Appeals stated in *Conklin v. Schillinger*, 255 Md. 50, 71, 257 A.2d 187 (1969):

> The difficulty in the Maryland cases arises in regard to factual situations in which there is no evidence of *actual intent* to injure or of *actual malice* toward the injured person, but in which the defendant's conduct is of such an extraordinary character as possibly to be the legal equivalent of such actual intent or actual malice, sometimes described as 'wanton,' 'reckless disregard of the rights of others,' and the like ... (emphasis in original).

Malice, actual or implied, is not an element of the tort of abuse of process. *Palmer Ford, Inc., v. Wood*, 298 Md. at 511, 471 A.2d 297; *Prosser and Keeton, supra* at 897. Furthermore, there was no evidence before the jury that Palmer Ford, in abusing the criminal process issued against Wood, acted with an evil or rancorous motive influenced by hate intending to deliberately injure Wood (actual malice) or with wanton and reckless disregard of Wood's rights (implied malice). The only evidence before the jury concerned Wood's arrest, prosecution, and consequences which he suffered as a result. The jury knew nothing of the transaction which prompted Palmer Ford to attempt to recover the debt it believed it was owed by Wood by using criminal process. The jury was not privy to the conversation between Kirby and Mrs. Wood on April 27 which was critical to establishing Palmer Ford's abuse of process. The trial court, at the conclusion of the evidence, should have

granted judgment in favor of Palmer Ford on Wood's claim for punitive damages.

Wood has entered no cross appeal from the judgment below challenging the trial court's view of the evidence material to the issue of his entitlement to punitive damages. That issue is not before us.

JUDGMENT FOR COMPENSATORY DAMAGES AFFIRMED;

JUDGMENT FOR PUNITIVE DAMAGES REVERSED;

COSTS TO BE DIVIDED BETWEEN THE PARTIES.